Alice NAKSHIAN

v.

**W. Graham CLAYTOR, in his Official Capacity as Secretary of the Navy, et al., Appellants.**

No. 79–1672.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 28, 1979.

Decided Feb. 19, 1980.

Rehearing Denied May 5, 1980.

Michael Jay Singer, Atty., Dept. of Justice, Washington, D. C., with whom Carl S. Rauh, U. S. Atty., Washington, D. C., at the time the briefs were filed, and Robert E. Kopp, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellants.

Terry Coleman, Washington, D. C., for appellee. Patricia J. Barry, Washington, D. C., also entered an appearance for appellee.

Before WRIGHT, Chief Judge, BAZELON, Senior Circuit Judge, and TAMM, Circuit Judge.

Opinion for the court filed by Chief Judge J. SKELLY WRIGHT.

Dissenting opinion filed by Circuit Judge TAMM.

J. SKELLY WRIGHT, Chief Judge:

This interlocutory appeal, pursuant to 28 U.S.C. § 1292(b) (1976),[1] is from a District Court order denying the Government's motion to strike the plaintiff's request for a jury trial in her action against the Secretary of the Navy for alleged violations of the Age Discrimination in Employment Act

1. Under 28 U.S.C. § 1292(b) (1976) a District Court may certify, and the Court of Appeals may thereupon permit, appeals from interlocutory orders which involve "a controlling question of law as to which there is substantial ground for difference of opinion" and immediate review of which "may materially advance the ultimate termination of the litigation."

(ADEA), 29 U.S.C. § 621 *et seq.* (1976), as amended by Pub.L.No.95–256, 95th Cong., 2d Sess. (April 6, 1978), 92 Stat. 189–193. It raises questions concerning the right to a jury trial in an ADEA action against the federal government. District Judge Oberdorfer certified the issue for interlocutory appeal, and we granted the Government's petition for interlocutory review.

## I

Appellee was a 62-year-old civilian employee of the United States Department of the Navy at the time she brought this action in the District Court under Section 15(c) of the ADEA, 29 U.S.C. § 633a(c) (1976),[2] against the Navy for alleged age discrimination in violation of the ADEA. She requested a jury trial. The Government moved to strike the request on the grounds that Congress, in authorizing ADEA actions against the federal government, did not specifically authorize jury trials and, therefore, that jury trials are barred by the doctrine of sovereign immunity.

The District Court denied the Government's motion, suggesting in its memorandum opinion that this result followed from the Supreme Court's decision in *Lorillard v. Pons,* 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978). In that case the Supreme Court held that there is a right to jury trial in an ADEA suit brought against private employers pursuant to Section 7(c), 29 U.S.C. § 626(c) (1976), of the Act. The Supreme Court noted that Congress had expressly provided that the enforcement of the ADEA would be in accordance with the "powers, remedies, and procedures" of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.* (1976), and it has long been settled that there is a right to a jury trial in actions brought against private employers under the FLSA. The Supreme Court inferred from this that Congress must have intended to provide for a similar jury trial right in actions brought against

private employers under the ADEA. In addition, the Court found the use of the term of art "legal * * * relief" in the wording of the statute significant. In the Court's view it provided further evidence of Congress' intention to provide for jury trials since it is settled that in cases in which legal relief is available and legal rights are determined the Seventh Amendment guarantees the right to jury trial.

The District Court pointed out that the same "legal * * * relief" language that the Supreme Court found significant in *Lorillard* is used in Section 15(c) of the Act, 29 U.S.C. § 633a(c) (1976), which authorizes suits against the federal government. The court also noted that as originally enacted the ADEA did not apply to the Government. In amending the Act in 1974 to make it applicable to the Government, Congress made few changes in the Act. Indeed, it used the exact same language in Section 15(c), 29 U.S.C. § 633a(c), as it had used in Section 7(c), 29 U.S.C. § 626(c). This, in the court's view, indicated that Congress intended suits against the Government to be on equal footing with suits against private employers. Finally, the court observed that if Congress had intended to preclude jury trials in ADEA suits against the federal government it would have done so.

## II

The Government rejects the District Court's analysis. It argues that since the Seventh Amendment right to jury trial applies only to "suits at common law," and at common law suits against the Government were barred by the doctrine of sovereign immunity, the right to jury trial therefore does not apply to actions against the Government under Section 15(c) of the Act. It further notes that Congress may, in waiving the Government's sovereign immunity, dictate the particular terms and conditions under which a suit against it may be brought. From these premises the Govern-

---

**2.** That section provides:

Any person aggrieved [by age-based discrimination] may bring a civil action in any

Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

ment purports to draw the conclusion that the availability of jury trial in actions against the Government requires a specific statutory provision to that effect; that a waiver of sovereign immunity "cannot be implied but must be unequivocally expressed." *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1503, 23 L.Ed.2d 52 (1969). It then examines the language and legislative history of the ADEA for such an explicit grant of a right to jury trial and, not surprisingly, is unable to find any.

The Government also rejects the suggestion that the Supreme Court's reasoning in *Lorillard* supports the inference that there is a jury trial right in ADEA actions against the Government. It notes that the FLSA right to a jury trial on which the Court relied in *Lorillard* was in fact based on the Seventh Amendment. Since the Seventh Amendment does not apply to suits against the Government, this supports the inference that there is no right to jury trial in ADEA actions against the Government. Similarly, it contends that the jury trial connotation of the term "legal * * * relief" derives from the Seventh Amendment and therefore cannot apply to actions against the Government. Finally, the Government maintains that Congress' response to the *Lorillard* decision supports its position. In 1978 Congress amended Section 7(c) by enacting language that expressly provides for jury trials in ADEA actions brought against private employers. Since no similar action was taken with respect to Section 15(c), the Government argues that Congress did not intend to allow jury trials in ADEA actions against the federal government.

Appellee does not dispute the Government's claim that the Seventh Amendment guarantee of jury trial does not apply to actions against the Government, or the claim that Congress may prescribe the procedure to be followed in a suit when it waives the Government's sovereign immunity. She does, however, reject the Government's claim that there is a right to sovereign immunity from jury trial which may be inferred from these two premises. In her view the Government confuses the well established principle of sovereign immunity from suits without its consent with an unrecognized principle of sovereign immunity from jury trials. Appellee argues that there is no automatic presumption against jury trial in actions against the Government and no unequivocal grant of a right to jury trial need be found. Rather, the issue is an ordinary one of statutory interpretation—whether or not Congress intended that employees who bring ADEA actions against the Government should have a right to jury trial. To support her claim that Congress intended to grant a right to jury trial in ADEA actions against the Government, appellee looks to the language and legislative history of the ADEA.

She notes that, as originally enacted, neither the FLSA nor the ADEA applied to the Government. In 1974 Congress simultaneously amended both statutes to extend their coverage to federal employees. It amended the definition of "employee" in Section 3(e) of the FLSA, 29 U.S.C. § 203(e) (1976), to include federal employees. In addition, Section 16(b) of the FLSA, 29 U.S.C. § 216(b) (1976), which creates a private right of action for unpaid wages and liquidated damages, was revised to provide that "[a]ction to recover such liability may be maintained against *any employer (including a public agency)* in any Federal or State court of competent jurisdiction * *." (Emphasis added.) Appellee maintains that the manner in which federal employees were brought under the FLSA makes it clear that Congress wanted the same procedures to apply to their lawsuits as had previously been applied in suits against private employers. Appellee concludes that federal employees have a right to jury trial in FLSA suits against the Government, and points out that the court so held in *Carter v. Marshall*, 457 F.Supp. 38 (D.D.C.1978).

Appellee argues that given this, the result in the instant case flows ineluctably from the *Lorillard* decision. *Lorillard* held that Congress intended that the ADEA be enforced in accordance with the procedures of the FLSA. Since, as just shown, Congress intended to grant a right to jury trial

in all FLSA actions, including those brought by federal employees, we must presume that Congress intended to grant a similar right in ADEA actions against the federal government. Appellee notes that Congress viewed the application of the ADEA to the federal government as a "logical extension of the * * * decision to extend FLSA coverage to Federal * * * employees." S.Rep.No.93–690, 93d Cong., 2d Sess. 55 (1974). Moreover, the original exclusion of federal employees from the coverage of the ADEA was an oversight which was due to the fact that in 1967 when the ADEA was enacted most Government employees were not covered by the FLSA. *Id.* This close linkage between the FLSA and the ADEA, appellee maintains, supports the inference that Congress wanted FLSA procedures, including the right to jury trial, to apply in ADEA actions against the Government.

Appellee also finds support for her position in the language of the ADEA. *Lorillard* relied in part on Section 7(b) of the Act, 29 U.S.C. § 626(b), which states:

> The provisions *of this chapter* shall be enforced in accordance with the powers, remedies, and procedures [of the FLSA].
> * * *

(Emphasis added.) By referring to the *entire chapter*, Section 7(b) explicitly applies to actions brought under Section 15 of the Act, 29 U.S.C. § 633a. When Congress added Section 15 to the Act in 1974 it would have amended Section 7(b) if it did not want FLSA procedures to apply in actions against the Government. Since it did not, it must be assumed that Congress' intention was that FLSA procedures, including the right to jury trial, should apply in ADEA actions.

Furthermore, appellee notes that the same term of art "legal * * * relief" that the Supreme Court found significant in *Lorillard* appears in Section 15(c) of the ADEA, 29 U.S.C. § 633a(c), and therefore gives rise to the same jury trial inference that the Supreme Court drew in *Lorillard.*

Appellee rejects the Government's attempt to distinguish *Lorillard* by arguing that the term was significant in that case only because of the Seventh Amendment. Appellee points out that *Lorillard* was not decided on the basis of the Seventh Amendment. Regardless of how the term "legal * * * relief" acquired its jury trial gloss, the holding in *Lorillard* was that its use implies that jury trial was intended.

Finally, appellee contends that the very fact that Congress vested jurisdiction in the District Court rather than the Court of Claims supports the inference of a right to jury trial.[3] She notes that the Supreme Court has intimated that when Congress confers jurisdiction over actions against the United States in the District Courts, it may be inferred that it intended to provide for jury trials. *United States v. Pfitsch*, 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084 (1921); *Law v. United States*, 266 U.S. 494, 45 S.Ct. 175, 69 L.Ed. 401 (1925). And Congress has shown that it is aware that a right to jury trial may be inferred when jurisdiction over actions against the United States is vested in the District Courts by expressly providing that there be no jury trial in most of these cases. *See* 28 U.S.C. § 2402 (1976) (providing that most actions under 28 U.S.C. § 1346 (1976) shall be tried by the court without a jury). The absence of any such provision in the ADEA is further indication that jury trial was intended.

### III

The first issue that we must resolve is whether the Government is correct in arguing that there is a sovereign immunity from jury trial that can only be waived by explicit statutory language or legislative history.

In our view the Government's argument rests on a serious misconception. The doctrine of sovereign immunity bars suits against the Government without its consent. Congress can waive this immunity by authorizing such suits. In so doing it can

---

**3.** It has long been settled that actions in the Court of Claims are tried without a jury. *See* *McElrath v. United States*, 102 U.S. (12 Otto) 426, 26 L.Ed. 189 (1880).

specify the procedures to be followed, including whether the case is to be tried to a jury or to the court. In the absence of an explicit statutory provision, it is the task of the courts to determine what type of trial—jury or court—Congress intended to authorize.[4]

By authorizing ADEA suits against the Government, Congress waived the Government's sovereign immunity, although it did not explicitly state what trial procedure is to be used in such cases. This does not, however, create an automatic presumption against jury trial in such cases. Rather, it presents us with an ordinary question of statutory interpretation—whether or not Congress intended that employees who bring ADEA actions against the Government should have a right to demand that the case be tried to a jury. Our task then is to see "if [the] statute, *expressly or by fair implication* so provides." 9 C. Wright & A. Miller, Federal Practice and Procedure § 2314 at 69 (1971) (emphasis added; footnote omitted). *See also* 5 J. Moore, Federal Practice ¶ 38.31[2] at 236 (2d ed. rev. 1979).

Courts can, and do, infer a congressional intention to allow jury trials in actions against the Government in the absence of explicit statutory authorization. For example, in *United States v. Pfitsch, supra,* 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084, the Supreme Court concluded that actions brought against the Government under the Lever Act of 1917, 40 Stat. 276 (1917), may be tried to a jury even though the statute did not provide for jury trials. Similarly, although the War Risk Insurance Act, 38 U.S.C. § 445 (1952) (now codified at 38 U.S.C. § 784 (1976)), did not, as originally enacted, provide for jury trials, it was construed by the Supreme Court to import "the usual procedure * * * in actions at law for money compensation," including trial by jury, in actions against the Government. *Law v. United States, supra,* 266 U.S. at 496, 45 S.Ct. at 176; *accord, Galloway v. United States,* 319 U.S. 372, 389 n.18, 63 S.Ct. 1077, 1086 n.18, 87 L.Ed. 1458 (1943).

We therefore agree with the District Court that appellee may demand a jury trial for her suit if there is enough evidence to support an inference that Congress intended to provide for jury trials in ADEA actions against the Government. Our review of the statute and legislative history persuades us that Congress did so intend.

First, we agree with appellee that the very fact that Congress gave jurisdiction over ADEA suits against the federal government to the District Courts rather than the Court of Claims supports the inference that there is a right to jury trial in such cases. As a leading authority has stated:

Congress may confer jurisdiction of *actions against the United States* upon a district court sitting as a court of law (or equity), as a court of claims, and as a court of admiralty. And the particular grant of jurisdiction will determine the method of trial, court or jury, in the absence of some express provision dealing with the method of trial. *Thus, absent a provision as to the method of trial, a grant of jurisdiction to a district court as a court of law carries with it a right of jury trial.* * * *

---

**4.** The Government and the dissent insist on an "express statement or * * * clear implication," dissenting opinion, 628 F.2d at 67, before they can find that there is a right to jury trial in an action against the Government. This view seems to be based on the supposition that there is a presumption against jury trial in actions against the Government even where sovereign immunity has been waived. The source of this supposition is not clear, but it appears to be connected with a misunderstanding of the doctrine of sovereign immunity. *See* dissenting opinion, 628 F.2d at 70. Since sovereign immunity bars *all* actions against the Government—actions tried to the court as well as those tried to a jury—it is difficult to see why this doctrine should create a presumption against any particular method of trial. Indeed, if there are to be any presumptions, it would seem that the preference for jury trials in our jurisprudence would support a presumption in favor of such trials. In any event, once Congress has waived the Government's immunity, and where it has not explicitly specified the trial procedure to be followed, sovereign immunity drops out of the picture. Courts must then scrutinize the available indicia of legislative intent to see what trial procedure Congress authorized.

5 J. Moore, *supra*, ¶ 38.32[2] at 236 (emphasis added; footnotes omitted); *accord*, 9 C. Wright & A. Miller, *supra*, § 2314 at 69 n.43. The Supreme Court's conclusions in *United States v. Pfitsch, supra,* and *Law v. United States, supra,* that actions against the Government could be tried to a jury were based on this reasoning.

Our belief that Congress intended to provide for jury trials is strengthened by Congress' choice of language in drafting the statutory provision. Congress used the term of art "*legal* and equitable relief" (emphasis added) in authorizing actions against the Government under Section 15(c), 29 U.S.C. § 633a(c), the same term it employed in authorizing actions against private employers under Section 7(c), 29 U.S.C. § 626(c). As appellee points out, the Supreme Court held in *Lorillard v. Pons, supra,* that the use of this term of art indicates an intention to provide for jury trials. To be sure, *Lorillard* involved a suit against a private employer. However, we must assume that Congress meant to confer the same rights when it used the same term in authorizing suits against the Government. Therefore, we may infer that, by authorizing "legal * * * relief" in ADEA actions against the Government, Congress was exercising its power to place such suits within the class of suits to which the Seventh Amendment jury trial guarantee applies. *Cf. Galloway v. United States, supra,* 319 U.S. at 388–389, 63 S.Ct. at 1086 ("Whatever force the [Seventh] Amendment has [in a suit against the Government] * * * is because Congress, in the legislation cited, has made it applicable.") (footnote omitted).[5]

We are not persuaded by the claim by the Government (and the dissent) that the 1978 amendments to the ADEA show that Congress did not intend to allow jury trials in actions against the Government. Congress amended Section 7(c), 29 U.S.C. § 626(c), to expressly provide for jury trials in actions against private employers. Pub.L.No.95–256 § 4, 92 Stat. 190, 95th Cong., 2d Sess. (April 6, 1978). The Government and the dissent suggest that if Congress had intended to allow jury trials against the Government, it would also have amended Section 15(c), 29 U.S.C. § 633a(c). However, the legislative history of the amendment and the context in which it was enacted demonstrate that Congress was merely acting to reaffirm its intention to provide for jury trial whenever the issue was in doubt.

The jury trial issue was raised on the floor of the Senate after the House had already passed the bill. Senator Kennedy offered the amendment on October 19, 1977 —before *Lorillard* was decided. He noted that three of the four circuits that had considered the issue had ruled in favor of jury trials, that the amendment would clarify the issue, and that jury trials were particularly appropriate in age discrimination cases.[6] The amendment was immediately adopted without debate. The bill was reported by the Conference Committee shortly after *Lorillard* was decided. The Conference Committee adopted the Senate amendment, and indeed expanded the amendment to provide for jury trials in actions for liquidated damages, an issue that the Supreme Court had left open in *Lorillard.*[7]

---

**5.** Thus in our view the dissent misses the point when it suggests that the jury trial connotation of the term "legal * * * relief" is inapplicable in this case because the Seventh Amendment does not apply to suits against the Government. *Dissenting opinion, 628 F.2d at 69.* Congress undoubtedly can, and in this case did, authorize "legal relief" in actions against the United States.

**6.** Senator Kennedy observed:
  [J]uries are more likely to be open to the issues which have been raised by the plaintiffs. Sometimes, a judge may be slightly callous, perhaps because he is protected by life tenure, or because he is somewhat removed from the usual employer-employee relationship. The jury may be more neutral in such circumstances.
      * * * * * *
  It seems to me to be wise to insure that particular protection to those who are subject to age discrimination.
  123 Cong.Rec. S17297 (daily ed. Oct. 19, 1977).

**7.** H.R.Rep.No.95–950, 95th Cong., 2d Sess. 13–14 (1978).

Thus what we see is Congress reiterating its belief in the appropriateness of jury trials in ADEA actions and acting to confirm the right whenever doubt appeared— first when there was conflict among the circuits on the jury trial issue, and later to resolve the question left open by *Lorillard.* The legislative history of the amendment speaks only in terms of confirming the right to jury trials in age discrimination cases. No attempt was made to draw a distinction between public and private employers.[8] That only Section 7(c) was amended is easily explained by the fact that the cases which prompted congressional action were brought against private employers.

Our reading of the legislative history of the 1978 amendment is consonant with a statement placed in the Congressional Record on September 5, 1979 by Congressman Pepper, Chairman of the House Committee on Aging and a member of the Conference Committee on the 1978 amendments to the ADEA. Congressman Pepper stated:

Those who participated in the House and Senate debates [on the amendment] would be surprised to learn that legislative efforts to confirm the right to a jury trial have been construed as a denial of that right. It would be indefensible to deny Federal employees the right to a jury trial. Under any legislative enactment in the field of civil rights, the Federal Government should be the leader not a grudging participant. * * * As chairman of the Committee on Aging, I will continue to watch developments in this area, and will ask for further delineation of the right of Federal employees to a jury trial if conflicting judicial interpretations are not resolved in favor of a jury trial.

125 Cong.Rec. E4258 (daily ed. Sept. 9, 1979).

## IV

The issue presented by this case is whether an employee who brings an ADEA action against the federal government may demand a jury trial for her suit. We agree with the District Court that a congressional intention to confer a right to jury trial in such cases may be inferred from the language and legislative history of the ADEA.

Accordingly, the judgment of the District Court is

*Affirmed.*

TAMM, Circuit Judge, dissenting:

The majority infers from several legislative actions a congressional intent to give federal plaintiffs a jury trial in ADEA actions. I believe this intent is anything but clear. I therefore respectfully dissent.

## I.

The seventh amendment states that "[i]n Suits at common law, . . . the right of trial by jury shall be preserved . . ." This provision of the Bill of Rights guarantees a jury trial for private parties in most federal civil actions. *See, e. g., Ross v. Bernhard,* 396 U.S. 531, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). By its very terms, however, the amendment does not apply to all cases but only to those arising under common law; thus actions in equity or admiralty are tried to a judge. At common law, a suit could not be maintained against the government due to its sovereign immunity; therefore, any action in which the government waives its immunity is not a suit at common law within the meaning of the amendment. *Galloway v. United States,* 319 U.S. 372, 388–89, 63 S.Ct. 1077, 1086, 87 L.Ed. 1458 (1943).

As the Supreme Court has stated, "It long has been established . . . that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976) (quoting *United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941)). Thus, when the government does consent to

**8.** *Id.*; *see* note 5 *supra.*

be sued, "there is a right to a jury trial . . . only if a statute, expressly or by fair implication so provides." 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2314, at 69 (1971) (footnote omitted). *See also* 5 Moore's Federal Practice ¶ 38.31[2], at 236 (2d ed. rev. 1971). In actions against the government under the ADEA, then, we must examine the Act's legislative history to see if Congress, in waiving sovereign immunity to permit an ADEA action, intended also to submit the government to jury trials.

## II.

Congress passed the ADEA in 1967 "to promote the employment of older workers based on their ability . . . through an education and information program to assist employers and employees in meeting employment problems . . . and through the utilization of informal and formal remedial procedures." H.R.Rep.No. 805, 90th Cong., 1st Sess. 1, *reprinted in* [1967] U.S.Code Cong. & Admin.News, pp. 2213, 2214. For the most part, Congress applied the enforcement provisions of the

Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–219 (1976), to the ADEA: "the powers, remedies, and procedures provided in section 211(b), 216 (except for subsection (a) thereof), and 217 of [title 29]" govern violations of the ADEA. *Id.* § 626(b) (1976). These provisions permit private actions by aggrieved employees "for such legal and equitable relief as will effectuate the purposes of [the ADEA]," 29 U.S. C.A. § 626(c)(1) (West Supp. 1979). The Secretary of Labor may also bring suits to halt discriminatory practices, 29 U.S.C. § 626(b) (1976).

As originally passed, the ADEA specifically excluded federal employees from coverage.[1] *See* ADEA, Pub.L.No. 90–202, § 11, 81 Stat. 602 (1967) (codified at 29 U.S.C. § 630(b) (1976)). In 1974, Congress amended the ADEA,[2] adding a new provision to deal specifically with age discrimination against federal employees. *See* Fair Labor Standards Amendments of 1974 (1974 FLSA Amendments), Pub.L.No. 93–259, § 28(b)(2), 88 Stat. 55 (1974)(codified at 29 U.S.C. § 633a (1976)).[3] It authorizes the

---

**1.** The FLSA originally excluded all public employees from coverage. *See* FLSA, ch. 676, § 3(d), 52 Stat. 1060 (1938) (amended 1974).

**2.** Congress also redefined "employer" in the FLSA to include "public agencies," thus extending the FLSA to cover all federal, state, and local governmental units. *See* 1974 FLSA Amendments, § 6(a)(1), (6) (codified at 29 U.S.C. § 203(d), (x) (1976).

Passage of the Fair Labor Standards Amendments of 1974 capped a three-year effort to raise the minimum wage and to increase the coverage of the FLSA and ADEA. The original bill, S. 1861, 92d Cong., 2d Sess., 118 Cong.Rec. 23952 (1972), did not contain provisions extending the ADEA to federal workers. During consideration of this bill, Senator Lloyd Bentsen introduced an amendment to include federal and state workers under the ADEA. The Senate Committee on Labor and Public Welfare adopted the amendment and included it in the bill sent to the Senate floor. *See* S.Rep.No. 842, 92d Cong., 2d Sess. 45 (1972). The bill passed the Senate but died when the House refused to meet in conference to resolve differences over the minimum wage provisions of its bill. In 1973 the Senate again passed a bill, S. 1861, 93d Cong., 1st Sess., 119 Cong.Rec. 24335 (1973), to increase the minimum wage and to extend the provisions of the ADEA and FLSA

to federal employees. House conferees insisted, however, on deleting the ADEA amendments as not germane. H.R.Rep.No. 413, 93d Cong., 1st Sess. 33 (1973) (conference report); 120 Cong.Rec. 4706 (1974) (statement of Sen. Frank Church). The President vetoed the bill as inflationary. Finally, after extensive debate, in 1974 Congress passed and the President signed the 1974 FLSA Amendments.

**3.** This section states in part:

(a) All personnel actions affecting employees or applicants for employment (except with regard to aliens employed outside the limits of the United States) in military departments as defined in section 102 of title 5, in executive agencies as defined in section 105 of title 5 (including employees and applicants for employment who are paid from nonappropriated funds), in the United States Postal Service and the Postal Rate Commission, in those units of the government of the District of Columbia having positions in the competitive service, and in those units of the legislative and judicial branches of the Federal Government having positions in the competitive service, and in the Library of Congress shall be made free from any discrimination based on age.

(b) Except as otherwise provided in this subsection, the Civil Service Commission is

Civil Service Commission[4] to enforce the ban on age discrimination through "appropriate remedies, including reinstatement or hiring of employees with or without back-pay." 29 U.S.C. § 633a(b). In addition, any aggrieved federal employee "may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter." *Id.* § 633a(c).

The legislative history of the 1974 FLSA Amendments does not mention the issue of jury trials under section 633a. Most of the debate on the 1974 FLSA Amendments dealt with its minimum wage provisions. Comments on the ADEA involved the need to extend its protection to federal and state workers.[5] Indeed, the committee report on the 1974 FLSA Amendments made clear that the original exclusion of the federal government from coverage under the ADEA was inadvertent:

> The Committee recognizes that the omission of government workers from the Age Discrimination in Employment Act did not represent a conscious decision by the Congress to limit the ADEA to employment in the private sector. It re-

flects the fact, that in 1967, when ADEA was enacted, most government employees were outside the scope of the FLSA[,] and the Wage Hour and Public Contracts Divisions of the Department of Labor, which enforces the Fair Labor Standards Act, were assigned responsibility for enforcing the Age Discrimination in Employment Act.

S.Rep.No. 690, 93d Cong., 2d Sess. 55 (1974). *Accord,* S.Rep.No. 300, 93d Cong., 1st Sess. 56 (1973); S.Rep.No. 842, 92d Cong., 2d Sess. 45 (1972).

The history of the 1974 FLSA Amendments indicates that Congress wanted federal employees to have the same protections from age discrimination as their counterparts in the private sector. Giving the same protection, however, does not necessarily mean Congress intended to establish the same procedures for federal employees to enforce those protections. With jury trials, congressional waiver of immunity can occur only by express statement or by clear implication; as noted above, however, Congress did not discuss jury trials for federal employees when considering the 1974

authorized to enforce the provisions of subsection (a) of this section through appropriate remedies, including reinstatement or hiring of employees with or without backpay, as will effectuate the policies of this section. The Civil Service Commission shall issue such rules, regulations, orders, and instructions as it deems necessary and appropriate to carry out its responsibilities under this section. The Civil Service Commission shall—

(1) be responsible for the review and evaluation of the operation of all agency programs designed to carry out the policy of this section, periodically obtaining and publishing (on at least a semiannual basis) progress reports from each department, agency, or unit referred to in subsection (a) of this section;

(2) consult with and solicit the recommendations of interested individuals, groups, and organizations relating to nondiscrimination in employment on account of age; and

(3) provide for the acceptance and processing of complaints of discrimination in Federal employment on account of age.

The head of each such department, agency, or unit shall comply with such rules, regulations, orders, and instructions of the Civil Service Commission which shall include a provision that an employee or applicant for

employment shall be notified of any final action taken on any complaint of discrimination filed by him thereunder. Reasonable exemptions to the provisions of this section may be established by the Commission but only when the Commission has established a maximum age requirement on the basis of a determination that age is a bona fide occupational qualification necessary to the performance of the duties of the position. With respect to employment in the Library of Congress, authorities granted in this subsection to the Civil Service Commission shall be exercised by the Librarian of Congress.

(c) Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter.

29 U.S.C. 633a (1976).

4. The Equal Employment Opportunity Commission assumed the duty of enforcing the ADEA in 1978. *See* Reorg. Plan No. 1 of 1978, § 2, 43 Fed.Reg. 19807 (1978), *reprinted in* 5 U.S.C.A. App. (West Supp.1979).

5. *See, e. g.,* 119 Cong.Rec. 24807 (1973) (remarks of Sen. Frank Church).

FLSA Amendments. This silence, therefore, must be construed as demonstrating that Congress did not intend federal employees to have jury trials under the ADEA.

The establishment of a separate legislative scheme for federal workers under the ADEA, 29 U.S.C. § 633a, supports this conclusion that Congress did not intend federal workers to have jury trials.[6] Congress entrusted the supervision of the age discrimination program in the federal government to the Civil Service Commission and not to the Department of Labor, the agency supervising the ADEA in the private sector. Congress authorized the Commission to promulgate rules and receive reports from government agencies detailing efforts to fight age discrimination. *Id.* § 633a(b)(1). The Commission established an administrative grievance procedure, *see* 5 C.F.R. § 713.501–.521 (1978), to resolve age discrimination complaints without judicial intervention. These administrative procedures are not available to private-sector employees, and they demonstrate that, although Congress wanted to grant the same protection to both federal and private employees, it did not mandate the same remedial procedures.

By 1978, a conflict had developed in the federal courts of appeals over the right to a jury trial in ADEA actions by employees in the private sector.[7] To resolve this controversy, Senator Edward Kennedy introduced an amendment to the Age Discrimination in Employment Amendments of 1978 (1978 ADEA Amendments), Pub.L.No. 95–256, 92 Stat. 189 (codified in scattered sections of 29 U.S.C.A. (West Supp.1979)), to ensure jury trials for private plaintiffs under section 626. *See* 123 Cong.Rec. S17296–97 (daily ed. Oct. 19, 1977). While the legislation still was pending, the Supreme Court handed down its decision in *Lorillard v. Pons*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), which held in a private-sector case that Congress indeed had intended plaintiffs to have jury trials in ADEA actions to recover lost wages. House and Senate conferees nevertheless incorporated the jury trial provision in the final version of the 1978 ADEA Amendments and clarified an issue left unresolved in *Lorillard* by granting private-sector employees a right to jury trials when liquidated damages were involved. H.R.Rep.No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* [1978] U.S.Code Cong. & Admin.News, pp. 504, 528, 535. *See* 1978 ADEA Amendments § 4(a) (codified at 29 U.S.C.A. § 626(c)(2) (West Supp. 1979)).

Despite its reexamination of the jury trial provisions, Congress did not amend section 633a, the corresponding section giving federal workers the right to bring civil actions for age discrimination against the United States. As the Fifth Circuit has noted in a related context, "Where Congress has carefully employed a term in one place but excluded it in another, it should not be implied where excluded." *J. Ray McDermott & Co. v. Vessel Morning Star*, 457 F.2d 815 (5th Cir.) (en banc), *cert. denied*, 409 U.S. 948, 93 S.Ct. 271, 34 L.Ed.2d 218 (1973). *See also Diamond Roofing Co.*

**6.** Senator Lloyd Bentsen introduced S. 3318, 92d Cong., 2d Sess., 118 Cong.Rec. 7745 (1972), to extend the ADEA to federal employees. This separate bill would have amended the definition of employer in 29 U.S.C. § 630(b) to include the federal and state governments. Such an amendment would have placed the federal government in the same position as all other employers subject to the ADEA. Senator Bentsen, later that term, introduced his amendment to the FLSA Amendments bill. Rather than altering the definition of employer, this amendment established a separate section with special procedures for dealing with age discrimination in the government. The use of the separate provision for federal employees under the ADEA, rather than the simple change in the definition of employer under S. 3318, indicates that Congress contemplated different procedures for the two programs.

**7.** *Compare Rogers v. Exxon Research & Eng'r Co.*, 550 F.2d 834 (3d Cir. 1977) (right to jury trial), *cert denied*, 434 U.S. 1022, 98 S.Ct. 749, 54 L.Ed.2d 770 (1978), *and Pons v. Lorillard*, 549 F.2d 950 (4th Cir. 1977) (same), *aff'd*, 434 U.S. 575, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978), *with Morelock v. NCR Corp.*, 546 F.2d 682 (6th Cir. 1976) (no right to jury trial), *vacated and remanded*, 435 U.S. 911, 98 S.Ct. 1463, 55 L.Ed.2d 503 (1978).

*v. OSHRC*, 528 F.2d 645 (5th Cir. 1976). The failure to adopt a parallel amendment indicates that Congress did not intend to extend its waiver of sovereign immunity to permit jury trials for federal employees.[8]

### III.

Appellees also argue, and the majority agrees, that *Lorillard v. Pons* supports a right to jury trial for federal plaintiffs under the ADEA. This reliance is misplaced. *Lorillard* arose in the private sector and involved section 626, which adopts FLSA remedies. *See* p. —— of 202 U.S.App.D.C., p. 60 of 628 F.2d *supra*. The Court concluded that Congress intended plaintiffs under section 626—by definition, employees in the private sector only [9]—to have the same rights as plaintiffs under the FLSA, who may insist on jury trials.[10] At no time did the Court discuss federal employees, section 633a, or congressional waiver of sovereign immunity. This right to demand a jury trial does not extend to federal employees suing under section 633a, for the waiver of sovereign immunity to allow jury trials for federal plaintiffs presents different concerns. Juries may be too sympathetic toward plaintiffs in cases where the federal government is the defendant. Congress has noted this problem when considering bills authorizing jury trials against the government: "The primary objection to granting jury trials in suits against the United States is that juries, in considering possible sums to be awarded the plaintiff, might tend to be overly generous because of the virtually unlimited ability of the Government to pay the verdict." H.R.

Rep.No. 659, 83d Cong., 2d Sess. 3 *reprinted in* [1954] U.S.Code Cong. & Amin.News, pp. 2716, 2718 (amending 28 U.S.C. § 2402 to allow jury trials in suits by taxpayers for tax refunds from the federal government). Trying a case to a judge removes this potential bias.

The majority further observes that the Court in *Lorillard* based its decision in part on the presence of the term "legal . . . relief" in section 626(b), which the Court believed suggested a congressional desire for jury trials. *See* 434 U.S. at 585, 98 S.Ct. at 871. The majority contends that the appearance of "legal . . . relief" in section 633a(c)(1) similarly supports a jury trial for federal employees. The *Lorillard* Court, however, based its findings of congressional intent on the meaning of the term under the seventh amendment.[11] As noted above, the seventh amendment does not apply in this case, for common-law or "legal" remedies cannot lie against the federal government. *See* pp. —— – —— of 202 U.S.App.D.C., pp. 65–66 of 628 F.2d *supra*. Thus, reliance on Congress's use of "legal . . . relief" in section 633a would be inappropriate because of the term's relationship to the seventh amendment.

Reliance on *United States v. Pfitsch*, 256 U.S. 547, 41 S.Ct. 569, 65 L.Ed. 1084 (1921), is equally unavailing. *Pfitsch* involved "the nature of the jurisdiction conferred upon the District Court by § 10 of the Lever Act [c. 53, 40 Stat. 276 (1917)]," *id.* at 549, 41 S.Ct. at 569, a wartime measure authorizing seizure of supplies for the American effort in World War I. The Court, after exam-

---

8. The failure to amend § 633a cannot be deemed inadvertent. The Kennedy amendment, though adopted on the Senate floor with little debate, received careful consideration in the conference committee, which altered it to clarify the right to jury trial when liquidated damages were involved. *See* H.R.Rep.No. 950, 95th Cong., 2d Sess. 13–14, *reprinted in* [1978] U.S.Code Cong. & Admin.News pp. 504, 536. The conference committee also altered § 633a, amending subsection (a) and adding subsections (f) and (g) to authorize studies of age discrimination. *Id.* In amending both sections as it did, Congress could not have overlooked

the need to amend § 633a(c) to allow jury trials for government employees if it had so wished.

9. *See* 29 U.S.C. § 630(b) (1976) (excluding the federal government from ADEA's definition of employer).

10. *See, e. g., Lewis v. Times Publishing Co.*, 185 F.2d 457 (5th Cir. 1950).

11. The Court stated: "In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial." 434 U.S. at 583, 98 S.Ct. at 871.

ining the legislative history of the Lever Act, concluded that Congress had intended district courts to have sole jurisdiction under section 19 rather than concurrent jurisdiction with the Court of Claims. Given this exclusive jurisdiction, an appeal from the district court should have gone to the Circuit Court of Appeals rather than the Supreme Court on direct writ of error. The Court therefore dismissed the appeal for want of jurisdiction.

In its decision, the Court in dictum indicated that exclusive jurisdiction in the district court under the Lever Act would include "incidentally" a right to jury trial against the federal government. *Id.* at 550, 41 S.Ct. at 570. The Court mentioned jury trials only in reaching its conclusion about the type of jurisdiction Congress had conferred. It neither discussed nor decided a plaintiff's right to jury trial per se. These few comments on the right to a jury trial under the Lever Act do not mean that Congress waives the government's immunity to jury trial anytime it confers sole jurisdiction on the district courts. The "fair implication" of the right to jury trial as found in *Pfitsch*, 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2314, at 69 & n.43 (1971), *quoted* at p. 66 *supra*, cannot be drawn in this case, for Congress established a separate enforcement scheme for federal employees under the ADEA and then failed to alter that scheme to allow jury trials for federal plaintiffs when it provided that right to private-sector employees in 1978.[12]

## IV.

Sovereign immunity, though criticized, remains a viable doctrine. *See, e. g., Fitzgerald v. United States Civil Service Commission,* 180 U.S.App.D.C. 327, 554 F.2d 1186 (D.C.Cir. 1977) (Bazelon, C. J.). Jury trials, though favored, are not always permitted.[13] This favor does not extend to suits against the government. "[W]hile statesmen and jurists are often wont to extol the virtues of jury trial, they are not accustomed to extend the virtues to actions against the United States, either in the Court of Claims or in the district courts." 5 Moore's Federal Practice, ¶ 38.31[2], at 234–35 (footnotes omitted). Congress has had ample opportunity to afford federal employees the right to jury trial under the ADEA but has failed to do so. We should not apply what it has so far denied.

I respectfully dissent.

---

12. In addition, *Pfitsch* supplies the sole support for the assertions made in 9 C. Wright & A. Miller, Federal Practice and Procedure: Civil § 2314, and 5 Moore's Federal Practice ⸰ 38.31[2], that jurisdiction in the United States District Court against the federal government carries with it the right to jury trial.

13. *Cf.* 28 U.S.C. § 2402 (1976) (any action brought under Federal Tort Claims Act will be tried to the court without jury).