LEHMAN, SECRETARY OF THE NAVY *v.* NAKSHIAN

No. 80–242.  Argued March 31, 1981—Decided June 26, 1981

STEWART, J., delivered the opinion of the Court, in which BURGER, C. J., and WHITE, POWELL, and REHNQUIST, JJ., joined.  BRENNAN, J., filed

a dissenting opinion, in which MARSHALL, BLACKMUN, and STEVENS, JJ., joined, *post,* p. 169.

*Edwin S. Kneedler* argued the cause for petitioner. With him on the briefs were *Solicitor General McCree, Acting Assistant Attorney General Martin, Deputy Solicitor General Geller, Robert E. Kopp,* and *Michael Jay Singer.*

*Patricia J. Barry* argued the cause and filed a brief for respondent.*

JUSTICE STEWART delivered the opinion of the Court.

The question presented by this case is whether a plaintiff in an action against the United States under § 15 (c) of the Age Discrimination in Employment Act is entitled to trial by jury.

I

The 1974 amendments to the Age Discrimination in Employment Act of 1967 [1] added a new § 15,[2] which brought the Federal Government within the scope of the Act for the first time. Section 15 (a) [3] prohibits the Federal Government from discrimination based on age in most of its civilian employment decisions concerning persons over 40 years of age. Section 15 (b) [4] provides that enforcement of § 15 (a)

---

*Briefs of *amici curiae* urging affirmance were filed by *Mary E. Jacksteit* for the American Federation of Government Employees (AFL-CIO); and by *Congressman Claude Pepper, pro se,* and *Edward F. Howard* for Mr. Pepper et al.

[1] 81 Stat. 602, as amended, 29 U. S. C. §§ 621-634 (1976 ed. and Supp. III).

[2] 29 U. S. C. § 633a.

[3] Section 15 (a), as amended in 1978, provides in pertinent part:

"All personnel actions affecting employees or applicants for employment who are at least 40 years of age . . . in military departments [and other enumerated Government agencies] shall be made free from any discrimination based on age. 29 U. S. C. § 633a (a) (1976 ed., Supp. III).

[4] 29 U. S. C. § 633a (b) (1976 ed. and Supp. III).

in most agencies, including military departments, is the responsibility of the Equal Employment Opportunity Commission. The Commission is directed to "issue such rules, regulations, orders and instructions as [the Commission] deems necessary and appropriate" to carry out that responsibility. Section 15 (c) [5] provides:

> "Any person aggrieved may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this Act." 88 Stat. 75.

In 1978, respondent Alice Nakshian, who was then a 62-year-old civilian employee of the United States Department of the Navy, brought an age discrimination suit against the Navy under § 15 (c). She requested a jury trial. The defendant moved to strike the request, and the District Court denied the motion. *Nakshian* v. *Claytor*, 481 F. Supp. 159 (DC). The court stressed that the "legal or equitable relief" language used by Congress to establish a right to sue the Federal Government for age discrimination was identical to the language Congress had previously used in § 7 (c) of the Act [6] to authorize private ADEA suits. That language,

---

[5] 29 U. S. C. § 633a (c).

[6] Section 7 (c), as amended in 1978 and as set forth in 29 U. S. C. § 626 (c) (1976 ed., Supp. III), provides:

"(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter; *Provided*, That the right of any person to bring such action shall terminate upon the commencement of an action by the Commission to enforce the right of such employee under this chapter.

"(2) In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action."

With the exception of the express right to jury trial conferred by § 7 (c)(2) and of the proviso in § 7 (c)(1), § 7 (c) is identical to § 15 (c). Section 7 (c)(2) was added by the 1978 amendments of the ADEA.

the District Court said, was an important basis for this Court's holding in *Lorillard* v. *Pons*, 434 U. S. 575, that § 7 (c) permits jury trials in private suits under the Act. The court stated that "if Congress had intended its consent to ADEA suits [against the Government] to be limited to non-jury trials, it could have easily said as much." 481 F. Supp., at 161. Recognizing that as a result of 1978 amendments to the ADEA § 7 (c)(2) expressly confers a right to jury trial, whereas no such language exists in § 15,[7] 481 F. Supp., at 161, the court found no "explicit refusal" by Congress to grant the right to jury trial against the Government, and noted that the legislative history of the 1978 amendments spoke in general terms about a right to jury trial in ADEA suits.

On interlocutory appeal under 28 U. S. C. § 1292 (b), a divided panel of the Court of Appeals affirmed. *Nakshian* v. *Claytor*, 202 U. S. App. D. C. 59, 628 F. 2d 59. The appellate court rejected the Secretary's argument that a plaintiff is entitled to trial by jury in a suit against the United States only when such a trial has been expressly authorized. Instead, the court viewed the question as "an ordinary question of statutory interpretation," and found sufficient evidence of legislative intent to provide for trial by jury in cases such as this. Noting that Congress had conferred jurisdiction over ADEA suits upon the federal district courts, rather than the Court of Claims, the Court of Appeals concluded that " 'absent a provision as to the method of trial, a grant of jurisdiction to a district court as a court of law carries with it a right of jury trial.' " *Id.*, at 63, 628 F. 2d, at 63 (quoting 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.32 [2], p. 38–236 (1979) (footnotes omitted)). The Court of Appeals also adopted the District Court's view of the "legal . . . relief" language in § 15 (c). Further, it was the court's view that the existence of the explicit statutory right to jury trial in suits against private employers does not

---

[7] See n. 6, *supra.*

negate the existence of a right to jury trial in suits against the Government, since the provision for jury trials in private suits was added only to resolve a conflict in the Courts of Appeals on that issue and to confirm the correctness of this Court's decision in the *Lorillard* case.

We granted certiorari to consider the issue presented. *Sub nom. Hildalgo* v. *Nakshian,* 449 U. S. 1009.

## II

It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government. In *Galloway* v. *United States,* 319 U. S. 372, 388–389, the Court observed (footnotes omitted):

> "The suit is one to enforce a monetary claim against the United States. It hardly can be maintained that under the common law in 1791 jury trial was a matter of right for persons asserting claims against the sovereign. Whatever force the Amendment has therefore is derived because Congress, in the legislation cited, has made it applicable."

See also *Glidden Co.* v. *Zdanok,* 370 U. S. 530, 572; *McElrath* v. *United States,* 102 U. S. 426, 440. Moreover, the Court has recognized the general principle that "the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States* v. *Testan,* 424 U. S. 392, 399, quoting *United States* v. *Sherwood,* 312 U. S. 584, 586. See also *United States* v. *Mitchell,* 445 U. S. 535, 538. Thus, if Congress waives the Government's immunity from suit, as it has in the ADEA, 29 U. S. C. § 633a (1976 ed. and Supp. III), the plaintiff has a right to a trial by jury only where that right is one of "the terms of [the Government's] consent to be sued." *Testan, supra,* at 399. Like a waiver of immunity itself, which must be "unequivocally expressed," *United States* v. *Mitchell,*

*supra,* at 538, quoting *United States* v. *King,* 395 U. S. 1, 4, "this Court has long decided that limitations and conditions upon which the Government consents to be sued must be strictly observed and exceptions thereto are not to be implied." *Soriano* v. *United States,* 352 U. S. 270, 276. See also *United States* v. *Kubrick,* 444 U. S. 111, 117–118; *United States* v. *Sherwood, supra,* at 590–591.

When Congress has waived the sovereign immunity of the United States, it has almost always conditioned that waiver upon a plaintiff's relinquishing any claim to a jury trial. Jury trials, for example, have not been made available in the Court of Claims for the broad range of cases within its jurisdiction under 28 U. S. C. § 1491—*i. e.,* all claims against the United States "founded either upon the Constitution, or any Act of Congress, . . . or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." See *Glidden Co., supra.* And there is no jury trial right in this same range of cases when the federal district courts have concurrent jurisdiction. See 28 U. S. C. §§ 1346 (a)(2) and 2402. Finally, in tort actions against the United States, see 28 U. S. C. § 1346 (b), Congress has similarly provided that trials shall be to the court without a jury. 28 U. S. C. § 2402.[8]

---

[8] It is not difficult to appreciate Congress' reluctance to provide for jury trials against the United States. When fashioning a narrow exception to permit jury trials in tax refund cases in federal district courts under 28 U. S. C. § 1346 (a)(1), in legislation that Congress recognized established a "wholly new precedent," H. R. Rep. No. 659, 83d Cong., 1st Sess., 3 (1953), Congress expressed its concern that juries "might tend to be overly generous because of the virtually unlimited ability of the Government to pay the verdict." *Ibid.* Indeed, because of their firm opposition to breaking with precedent, the House conferees took almost a year before acceding to passage of the bill containing that exception. Only after much debate, and after the conferees became convinced that there would be no danger of excessive verdicts as a result of jury trials in that unique context—because recoveries would be limited to the amount

The appropriate inquiry, therefore, is whether Congress clearly and unequivocally departed from its usual practice in this area, and granted a right to trial by jury when it amended the ADEA.[9]

## A

Section 15 of the ADEA, 29 U. S. C. § 633a (1976 ed. and Supp. III), prohibits age discrimination in federal employment. Section 15 (c) provides the means for judicial enforcement of this guarantee: any person aggrieved "may bring a civil action in any Federal district court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes" of the Act. Section 15 contrasts with § 7 (c) of the Act, 29 U. S. C. § 626 (c) (1976 ed., Supp. III), which authorizes civil actions against private employers and state and local governments, and which *expressly* provides for jury trials. Congress accordingly demonstrated that it knew how to provide a statutory right to a jury trial when it wished to do so elsewhere in the very "legislation cited," *Galloway, supra,* at 389. But in § 15 it failed explicitly to do so.[10] See

---

of taxes illegally or erroneously collected—was the bill passed. See H. R. Conf. Rep. No. 2276, 83d Cong., 2d Sess., 2 (1954).

[9] The respondent argues that the strong presumption against the waiver of sovereign immunity has no relevance to the question of a right to trial by jury. But it is clear that the doctrine of sovereign immunity and its attendant presumptions must inform the Court's decision in this case. The reason that the Seventh Amendment presumption in favor of jury trials does not apply in actions at law against the United States is that the United States is immune from suit, and the Seventh Amendment right to a jury trial, therefore, never existed with respect to a suit against the United States. Since there is no generally applicable jury trial right that attaches when the United States consents to suit, the accepted principles of sovereign immunity require that a jury trial right be clearly provided in the legislation creating the cause of action.

[10] The dissenters contend that this argument can only be made at the expense of overruling the *Lorillard* decision. But, as hereafter indicated, *Lorillard* has little relevance here. And, of course, the position taken in the dissent totally loses its force in view of the 1978 amendments to the

*Fedorenko* v. *United States,* 449 U. S. 490, 512–513; cf. *Monroe* v. *Standard Oil Co.,* 452 U. S. 549, 561.

The respondent infers statutory intent from the language in § 15 (c) providing for the award of "legal or equitable relief," relying on *Lorillard* v. *Pons,* 434 U. S. 575, for the proposition that the authorization of "legal" relief supports a statutory jury trial right. But *Lorillard* has no application in this context. In the first place, the word "legal" cannot be deemed to be what the *Lorillard* Court described as "a term of art" with respect to the availability of jury trials in cases where the defendant is the Federal Government. In *Lorillard,* the authorization for the award of "legal" relief was significant largely because of the presence of a constitutional question. The Court observed that where legal relief is granted in litigation between private parties, the Seventh Amendment guarantees the right to a jury, and reasoned that Congress must have been aware of the significance of the word "legal" in that context. But the Seventh Amendment has no application in actions at law against the Government, as Congress and this Court have always recognized. Thus no particular significance can be attributed to the word "legal" in § 15 (c).

Moreover, another basis of the decision in *Lorillard* was that when Congress chose to incorporate the enforcement scheme of the Fair Labor Standards Act (FLSA) into § 7 of the ADEA, it adopted in ADEA the FLSA practice of making jury trials available. 434 U. S., at 580–583. Again, that reasoning has no relevance to this case, because Congress did not incorporate the FLSA enforcement scheme into § 15. See 29 U. S. C. § 633a (f) (1976 ed., Supp. III). Rather, §§ 15 (a) and (b) are patterned after §§ 717 (a) and (b) of the Civil Rights Act of 1964, as amended in March 1972, see Pub. L. 92–261, 86 Stat. 111–112, which extend the protection of

ADEA, see *infra,* at 167–168, where Congress expressly extended a jury trial right in § 7 (c) but not in § 15 (c).

Title VII to federal employees. 42 U. S. C. §§ 2000e–16 (a) and (b). See 118 Cong. Rec. 24397 (1972) (remarks of Sen. Bentsen, principal sponsor of § 15 of ADEA). And, of course, in contrast to the FLSA,[11] there is no right to trial by jury in cases arising under Title VII. See *Lorillard, supra,* at 583–584; *Great American Federal Savings & Loan Assn.* v. *Novotny,* 442 U. S. 366, 375, and n. 19.

The respondent also infers a right to trial by jury from the fact that Congress conferred jurisdiction over ADEA suits upon the federal district courts, where jury trials are ordinarily available, rather than upon the Court of Claims, where they are not. Not only is there little logical support for this inference, but the legislative history offers no support for it either.[12] Moreover, Rule 38 (a) of the Federal Rules of Civil Procedure provides that the right to a jury trial "as declared by the Seventh Amendment to the Constitution or as *given*

---

[11] The decisions cited by the Court in *Lorillard,* 434 U. S., at 580, n. 7, for the proposition that there is a right to a jury trial in FLSA actions all appear to have rested on the Seventh Amendment, not the FLSA itself. Thus, for the same reason that the Seventh Amendment does not apply in suits against the Federal Government, there would be no comparable right to trial by jury in FLSA suits against the Federal Government under 29 U. S. C. § 216 (b). Accordingly, even if Congress intended to incorporate the FLSA enforcement scheme into § 15 of the ADEA, there would be no basis for inferring a right to a jury trial in ADEA cases where the employer is the Federal Government.

[12] There are a number of reasons why Congress may have chosen to limit jurisdiction to the federal district courts. They, along with state courts, already had jurisdiction of private-sector ADEA cases under § 7 (c). Congress may have decided to follow the same course in federal sector cases, but confined jurisdiction to federal district courts so that there would not be trials in state courts of actions against the Federal Government. Exclusive district court jurisdiction is also consistent with the jurisdictional references in Title VII of the Civil Rights Act of 1964. See 42 U. S. C. §§ 2000e–5 (f) (3) and 2000e–16 (c). Congress may also have believed it appropriate to have trials in federal district courts because they, unlike the Court of Claims, are accustomed to awarding equitable relief of the sort authorized by § 15 (c).

*by a statute of the United States* shall be preserved to the parties inviolate" (emphasis added). This language hardly states a general rule that jury trials are to be presumed whenever Congress provides for cases to be brought in federal district courts.[13] Indeed, Rule 38 (a) requires an affirmative statutory grant of the right where, as in this case, the Seventh Amendment does not apply.

## B

As already indicated, it is unnecessary to go beyond the language of the statute itself to conclude that Congress did not intend to confer a right to trial by jury on ADEA plaintiffs proceeding against the Federal Government. But it is helpful briefly to explore the legislative history, if only to demonstrate that it no more supports the holding of the Court of Appeals than does the statutory language itself.

---

[13] The respondent relies on *United States* v. *Pfitsch*, 256 U. S. 547. But the language relied on in *Pfitsch* is dicta, since the parties in that case agreed to trial by the court sitting without a jury, *id.*, at 549, and the jury trial issue was therefore not directly before the Court. In any event, *Pfitsch* is plainly distinguishable. There Congress specifically rejected a proposal, "presented to its attention in a most precise form," *id.*, at 552, to confer concurrent jurisdiction on the district courts and Court of Claims under the Tucker Act and instead conferred a new and exclusive jurisdiction on the district courts. Given the particular legislative history in that case, the Court found it "difficult to conceive of any rational ground" for conferring exclusive jurisdiction on the district courts *except* to provide for jury trials. *Ibid.* That, of course, is not true here. See n. 12, *supra.* Moreover, *Pfitsch* arose before Rule 38 (a) of the Federal Rules of Civil Procedure. Rule 38 (a) made it clear that there is no general right to trial by jury in civil actions in federal district courts. The Rule establishes a mechanism for determining when there is such a right—*i. e.,* when the Seventh Amendment applies, or if not, when a statute provides it.

The respondent also relies on *Law* v. *United States*, 266 U. S. 494. The statement in *Law* regarding jury trials, which in fact does no more than cite *Pfitsch*, is also dictum, and of virtually no relevance in this context.

The respondent cannot point to a single reference in the legislative history to the subject of jury trials in cases brought against the Federal Government. There is none. And there is nothing to indicate that Congress did not mean what it plainly indicated when it expressly provided for jury trials in § 7 (c) cases but not in § 15 (c) cases. In fact, the few inferences that may be drawn from the legislative history are inconsistent with the respondent's position.

The ADEA originally applied only to actions against private employers. Section 7 incorporated the enforcement scheme used in employee actions against private employers under the FLSA. In *Lorillard*, the Court found that the incorporation of the FLSA scheme into § 7 indicated that the FLSA right to trial by jury should also be incorporated. The *Lorillard* holding was codified in 1978 when § 7 (c) was amended to provide expressly for jury trials in actions brought under that section.

Congress expanded the scope of ADEA in 1974 to include state and local government and Federal Government employers. State and local governments were added as potential defendants by a simple expansion of the term "employer" in the ADEA. The existing substantive and procedural provisions of the Act, including § 7 (c), were thereby extended to cover state and local government employees. In contrast, Congress added an entirely new section, § 15, to address the problems of age discrimination in federal employment. Here Congress deliberately prescribed a distinct statutory scheme applicable only to the federal sector,[14] and one based not on

---

[14] A bill introduced by Senator Bentsen on March 9, 1972, S. 3318, 92d Cong., 2d Sess., 118 Cong. Rec. 7745 (1972), represented the first attempt to prohibit age discrimination in federal employment. This bill would have simply amended the definition of "employer" in the Act to include the Federal Government, as well as state and local governments. The result would presumably have been to bring federal employees under the procedural provisions in § 7. But Senator Bentsen subsequently sub-

the FLSA but, as already indicated, on Title VII,[15] where, unlike the FLSA, there was no right to trial by jury.[16]

Finally, in a 1978 amendment to ADEA, Congress declined an opportunity to extend a right to trial by jury to federal employee plaintiffs. Before the announcement of *Lorillard,* the Senate, but not the House, had included an amendment to § 7 (c) to provide for jury trials in a pending bill to revise ADEA. After *Lorillard,* the Conference Committee recommended and Congress enacted the present § 7 (c)(2), closely resembling the jury trial amendment passed by the Senate. But the Conference did not recommend, and Congress did not enact, any corresponding amendment of § 15 (c) to provide for jury trials in cases against the Federal Government. In-

---

mitted a revised version of his bill in the form of an amendment to pending FLSA amendments. See 118 Cong. Rec. 15894 (1972). In contrast to Senator Bentsen's original bill, this amendment to the ADEA proposed the expansion of the definition of the term "employer" only with respect to state and local governments; ADEA coverage of federal employees was to be accomplished by the addition of an entirely new and separate section to the Act (presently § 15). Senator Bentsen's amendment was included in the FLSA bill reported by the Committee on Labor and Public Welfare, S. Rep. No. 92–842, pp. 93–94 (1972), and it remained in this form when the bill was enacted into law in 1974.

[15] Sections 15 (a) and 15 (b) of the ADEA, as offered by Senator Bentsen and as finally enacted, are patterned directly after §§ 717 (a) and (b) of the Civil Rights Act of 1964, as amended in March 1972, see Pub. L. 92–261, 86 Stat. 111–112, which extend Title VII protections to federal employees. Senator Bentsen acknowledged that "[t]he measures used to protect Federal employees [from age discrimination] would be substantially similar to those incorporated" in recently enacted amendments to Title VII. 118 Cong. Rec. 24397 (1972).

[16] In fact, during floor consideration of the 1972 amendments to Title VII, the Senate rejected an amendment that would have conferred a statutory right to trial by jury in Title VII cases. *Id,* at 4919–4920. Senator Javits, in opposing the amendment, observed that it would impose "what would be a special requirement in these cases, as distinguished from the antidiscrimination field generally, of jury trial." *Id.,* at 4920.

deed, the conferees recommended and Congress enacted a new § 15 (f), 29 U. S. C. § 633a (f) (1976 ed., Supp. III), providing that federal personnel actions covered by § 15 are not subject to any other section of ADEA, with one exception not relevant here. See H. R. Conf. Rep. No. 95–950, p. 11 (1978). See also H. R. Rep. No. 95–527, p. 11 (1977) ("Section 15 . . . is complete in itself"). Since the new subsection (f) clearly emphasized that § 15 was self-contained and unaffected by other sections, including those governing procedures applicable in actions against private employers, Judge Tamm, dissenting in the Court of Appeals, was surely correct when he concluded that "[i]n amending both sections as it did, Congress could not have overlooked the need to amend [§ 15 (c)] to allow jury trials for government employees if it had so wished." 202 U. S. App. D. C., at 69, n. 8, 628 F. 2d, at 69, n. 8.

## C

But even if the legislative history were ambiguous, that would not affect the proper resolution of this case, because the plaintiff in an action against the United States has a right to trial by jury only where Congress has affirmatively and unambiguously granted that right by statute. Congress has most obviously not done so here. Neither the provision for federal employer cases to be brought in district courts rather than the Court of Claims, nor the use of the word "legal" in that section, evinces a congressional intent that ADEA plaintiffs who proceed to trial against the Federal Government may do so before a jury. Congress expressly provided for jury trials in the section of the Act applicable to private-sector employers, and to state and local governmental entities. It did not do so in the section applicable to the Federal Government as an employer, and indeed, patterned that section after provisions in another Act under which there is no right to trial by jury. The conclusion is inescapable that Congress did not depart from its normal practice of not providing a

right to trial by jury when it waived the sovereign immunity of the United States.

For these reasons, the judgment of the Court of Appeals is reversed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join, dissenting.

In *Lorillard* v. *Pons*, 434 U. S. 575 (1978), this Court held that an employee who brings an action against his private employer under § 7 (c) of the Age Discrimination in Employment Act (ADEA or Act), 29 U. S. C. § 626 (c), is entitled to trial by jury. The question presented in this case is whether a plaintiff has a right to trial by jury in an action against the Federal Government under § 15 (c) of the ADEA, 29 U. S. C. § 633a (c). The Court today holds that a jury trial is not available in such actions. Because I believe that Congress unmistakably manifested its intention to accord a jury trial right, I dissent.

I

Respondent brought this lawsuit in the United States District Court for the District of Columbia against the Secretary of the Navy, alleging violations of the ADEA. She demanded a jury trial, and the Secretary moved to strike that demand. The District Court denied the motion to strike, but certified for interlocutory appeal the question whether a jury trial is available in an ADEA action against the Federal Government. See 28 U. S. C. § 1292 (b). The Court of Appeals granted the Secretary's petition for interlocutory review and affirmed the ruling of the District Court that respondent is entitled to a jury trial. *Nakshian* v. *Claytor*, 202 U. S. App. D. C. 59, 628 F. 2d 59 (1980). Relying principally on the fact that Congress vested jurisdiction over ADEA suits against the Federal Government in the federal district courts rather than in the Court of Claims and on the authorization in § 15

(c) of the Act for the award of "legal and equitable relief," the Court of Appeals construed the statute to accord a jury trial.

## II

It is well settled that the "United States, as sovereign, 'is immune from suit save as it consents to be sued.'" *United States* v. *Testan,* 424 U. S. 392, 399 (1976), quoting *United States* v. *Sherwood,* 312 U. S. 584, 586 (1941). Consent to suit by the United States must be "unequivocally expressed." *United States* v. *Mitchell,* 445 U. S. 535, 538 (1980); *United States* v. *King,* 395 U. S. 1, 4 (1969). In the ADEA, the United States has expressly waived its immunity, 29 U. S. C. § 633a (1976 ed. and Supp. III), so that there can be no doubt of its consent to be sued. The requirement that a waiver of immunity be unequivocally expressed, however, does not, as the Court suggests, carry with it a presumption against jury trial in cases where the United States has waived its immunity. Indeed, we have previously declined to adopt such a presumption. See *Law* v. *United States,* 266 U. S. 494 (1925); *United States* v. *Pfitsch,* 256 U. S. 547 (1921).[1]

---

[1] As the Court of Appeals correctly noted:

"Since sovereign immunity bars *all* actions against the Government—actions tried to the court as well as those tried to a jury—it is difficult to see why this doctrine should create a presumption against any particular method of trial. . . . [O]nce Congress has waived the Government's immunity, and where it has not explicitly specified the trial procedure to be followed, sovereign immunity drops out of the picture. Courts must then scrutinize the available indicia of legislative intent to see what trial procedure Congress authorized." *Nakshian* v. *Claytor,* 202 U. S. App. D. C. 59, 63, n. 4, 628 F. 2d 59, 63, n. 4 (1980).

The Court's reliance on *Soriano* v. *United States,* 352 U. S. 270 (1957), is misplaced. See *ante,* at 160–161. There, the Court held that the statute of limitations prescribed by Congress barred petitioner's claim against the United States, because the "disability" asserted by petitioner to toll the limitations period was not one of the disabilities enumerated in the statute. In this context, the Court, therefore, concluded that "limitations and conditions upon which the Government consents to be sued must be strictly

Moreover, the Court's view that there is a presumption against jury trials in suits against the Federal Government is belied by the very statutes that it cites to indicate that Congress has often "conditioned [the] waiver [of immunity] upon a plaintiff's relinquishing any claim to a jury trial." *Ante*, at 161. The fact that Congress has found it necessary to state *expressly* that there is *no* jury trial right in a broad range of cases against the Government, see 28 U. S. C. §§ 1346, 2402, demonstrates that Congress does not legislate against the backdrop of any presumption against a jury trial right in suits against the United States. I believe, therefore, that once the Government unequivocally waives its immunity from suit, the plaintiff's right to jury trial is a question of statutory construction.[2] The proper inquiry is whether the statute expressly or by fair implication provides for a jury trial.[3] See *Law* v. *United States, supra; United States* v.

---

observed and exceptions thereto are not to be implied." 352 U. S., at 276. That is, where Congress has expressly provided for limitations on the waiver of immunity, "exceptions [to the limitations] are not to be implied." *Ibid.* That is not this case.

[2] There is of course no Seventh Amendment right to a jury trial against the Federal Government. *Galloway* v. *United States,* 319 U. S. 372, 388–389 (1943); *McElrath* v. *United States,* 102 U. S. 426, 440 (1880).

[3] Rule 38 (a) of the Federal Rules of Civil Procedure is not to the contrary. It provides that "[t]he right of trial by jury as declared by the Seventh Amendment to the Constitution or as given by a statute of the United States shall be preserved to the parties inviolate." There is no requirement in Rule 38 that Congress make its intent to authorize jury trials express, provided Congress otherwise makes its intent known. Indeed, Rule 38 was fully applicable at the time of *Lorillard* v. *Pons,* where this Court found a jury trial right even though the words "trial by jury," did not appear in the statute. The Court does not argue otherwise in stating that Rule 38 requires "an affirmative statutory grant" of the jury trial right. *Ante,* at 165. The Court does not argue that Rule 38 requires a jury trial right to be *express.* Obviously, that argument would be frivolous since *Lorillard* found a jury trial right in the absence of an express provision conferring the right. Either Rule 38 does not require that the grant

*Pfitsch, supra;* 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38–31 [2], p. 38–237 (1981); 9 C. Wright & A. Miller, Federal Practice and Procedure § 2314, p. 69 (1971). I turn, therefore, to the statute itself.

Congress passed the ADEA in 1967 to protect older workers against discrimination in the workplace on the basis of age. See 29 U. S. C. §§ 621 (b), 623; *Oscar Mayer & Co.* v. *Evans,* 441 U. S. 750, 756 (1979); *Lorillard* v. *Pons,* 434 U. S., at 577. See generally Note, Age Discrimination in Employment, 50 N. Y. U. L. Rev. 924, 945 (1975). The Act's protection was originally limited to employees in the private sector, see Pub. L. 90–202, § 11, 81 Stat. 605, 29 U. S. C. § 630 (b) (1970 ed.),[4] but Congress amended the Act in 1974 by adding § 15, which extended protection to federal employees as well. 29 U. S. C. § 633a. Section 15 (a) provides that personnel actions affecting federal employees "shall be made free from any discrimination based on age," while § 15 (b) grants the Equal Employment Opportunity Commission authority to enforce the statutory provisions.[5] Although there

---

be express, as I suggest, or the unanimous holding of the Court in *Lorillard* was wrong.

Still, the Court misapprehends the thrust of my argument when it states that Rule 38 "hardly states a general rule that jury trials are to be presumed whenever Congress provides for cases to be brought in federal district courts." *Ante,* at 165. I have simply argued that conferral of jurisdiction on the district courts raises an inference of a jury trial right in suits against the United States, because the Court of Claims, where there is no jury trial right, is an available alternative forum for such cases. Here, Congress chose for § 15 (c) cases the federal district courts, not the Court of Claims, as the appropriate forum.

[4] As originally passed, the definition of the term "employer" expressly excluded the United States, States, and political subdivisions from ADEA coverage. Pub. L. 90–202, § 11, 81 Stat. 605, 29 U. S. C. § 630 (b) (1970 ed.).

[5] The Equal Employment Opportunity Commission assumed enforcement authority from the Civil Service Commission in 1978 pursuant to Reorganization Plan No. 1 of 1978, § 2. 3 CFR 321 (1979), 5 U. S. C. App. p. 354 (1976 ed., Supp. III).

is no provision which expressly grants or precludes a jury trial, Congress provided in § 15 (c), 88 Stat. 75, that "[a]ny [federal employee] aggrieved may bring a civil action in any *Federal district court* of competent jurisdiction for such *legal* or equitable relief as will effectuate the purposes of this Act." 29 U. S. C. § 633a (c) (emphasis added). It is this provision that I believe demonstrates congressional intent to allow a jury trial in ADEA suits against the Federal Government.

In *Lorillard* v. *Pons, supra,* the Court construed § 7 (b) and § 7 (c) [6]—a provision identical to § 15 (c) in all relevant respects—to afford age discrimination plaintiffs the right to a jury trial against private employers.[7] The Court reached this result for two reasons. First, the Court found that the language in § 7 (b), 29 U. S. C. § 626 (b), that "[t]he provisions of this chapter shall be enforced in accordance with the powers, remedies, and procedures" of certain provisions of the Fair Labor Standards Act (FLSA), suggested that Congress intended to grant a jury trial right because "[l]ong before Congress enacted the ADEA, it was well established that there was a right to a jury trial in private actions pursuant to the FLSA." 434 U. S., at 580. Second, and more significant for this case, the Court found that § 7 (c)'s authorization of the courts to grant and individuals to seek *"legal or equitable relief,"* 29 U. S. C. § 626 (c) (emphasis added), strongly suggested that Congress intended to grant a jury trial right. 434 U. S., at 583. Thus, the Court held, as a

---

[6] Section 7(c) of the ADEA, 29 U. S. C. § 626 (c), as it read when *Lorillard* was decided, stated in full:

"Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter."

[7] By construing the statute to allow a jury trial, the Court did not have to decide whether "the Seventh Amendment requires that in a private action for lost wages under the ADEA, the parties must be given the option of having the case heard by a jury." 434 U. S., at 577.

matter of statutory construction, that the ADEA allows jury trials in actions against private employers.

In the instant case, Congress similarly authorized aggrieved persons to seek and district courts to grant "such *legal* or equitable relief as will effectuate the purposes of this chapter," 29 U. S. C. § 633a (c) (emphasis added), thereby suggesting that federal employees are entitled to a jury trial under the ADEA. As a unanimous Court emphasized in *Lorillard:*

> "The word 'legal' is a term of art: In cases in which legal relief is available and legal rights are determined, the Seventh Amendment provides a right to jury trial. See *Curtis* v. *Loether,* 415 U. S. 189, 195–196 (1974). '[W]here words are employed in a statute which had at the time a well-known meaning at common law or in the law of this country they are presumed to have been used in that sense unless the context compels to the contrary.' *Standard Oil* v. *United States,* 221 U. S. 1, 59 (1911). See *Gilbert* v. *United States,* 370 U. S. 650, 655 (1962); *Montclair* v. *Ramsdell,* 107 U. S. 147, 152 (1883). We can infer, therefore, that by providing specifically for 'legal' relief, Congress knew the significance of the term 'legal,' and intended that there would be a jury trial on demand . . . ." 434 U. S., at 583.[8]

---

[8] The Court's statement that "[i]n *Lorillard,* the authorization for the award of 'legal' relief was significant largely because of the presence of a constitutional question" is not correct. *Ante,* at 163. To be sure, a constitutional question was present in *Lorillard,* but the Court specifically declined to ground its decision on the Seventh Amendment. See n. 7, *supra.* Rather, it construed the language "legal or equitable relief" in § 7 (c) of the ADEA. The Court concluded that when Congress used the words "legal . . . relief," which are equally present in § 15 (c), it intended that a jury trial right be available. That Congress used the words "legal . . . relief" in § 7 (c) differently from the way it used the same words in § 15 (c) is implausible.

Moreover, the Court erroneously suggests that §§ 15 (a) and (b) are identical to §§ 717 (a) and (b) of Title VII of the Civil Rights Act of

Although the Seventh Amendment right to trial by jury in suits at common law does not extend to civil actions against the Federal Government, Congress may extend the jury trial right by legislation. See *Galloway* v. *United States*, 319 U. S. 372, 388–389 (1943). Congress' provision for *"legal and equitable relief"* suggests, therefore, that it intended to allow jury trials in ADEA actions against the Federal Government.

This strong inference that Congress intended to legislate a jury trial right is reinforced by Congress' decision to vest jurisdiction in the District Courts, rather than the Court of Claims, to decide ADEA suits brought against the Federal Government. This Court has previously observed that vesting jurisdiction in the district courts rather than the Court of Claims supports an inference of a right to jury trial. In *United States* v. *Pfitsch,* the Court stated that "the right to a jury trial is an incident" of the grant of "exclusive jurisdiction in the District Courts." 256 U. S., at 552. Similarly, in *Law* v. *United States,* the Court held that the District Court erred in denying a right to a jury trial under the War Risk Insurance Act, when the court concluded that its jurisdiction "was the exceptional jurisdiction concurrent with the Court of Claims," rather than that "exercised in accordance with the laws governing the usual procedure of the court in actions at law for money compensation." 266 U. S., at 496.[9]

---

1964, *ante,* at 163–164, for it fails to note that Title VII does not authorize the courts to award "legal relief," as § .15 (c) does.

[9] In *United States* v. *Pfitsch,* the Court construed § 10 of the Lever Act which conferred exclusive jurisdiction in the district courts to hear lawsuits brought by persons dissatisfied with the President's award of compensation for supplies requisitioned by the Federal Government. In deciding that a judgment rendered under § 10 is not reviewable in this Court by direct writ of error, the Court stated that Congress "had the issue clearly drawn between granting for the adjudication of cases arising under [§ 10] concurrent jurisdiction in the Court of Claims and the District Courts without a trial by jury, *or of establishing an exclusive*

Congress' vesting of jurisdiction in the federal district courts under § 15 (c) of the ADEA suggests, therefore, that it intended to provide a jury trial right to federal ADEA plaintiffs.[10]

The legislative history of the 1974 ADEA amendments, extending protection to federal employees, is consistent with

---

*jurisdiction in the District Courts of which the right to a jury trial is an incident."* 256 U. S., at 552 (emphasis added).

That Congress did not, so far as the legislative history indicates, expressly debate vesting concurrent jurisdiction in the Court of Claims over ADEA suits against the Federal Government does not weaken the force of *United States* v. *Pfitsch,* despite the Court's protestations to the contrary. Indeed, in *Law* v. *United States,* an important case that the Court virtually ignores, see *ante,* at 165, n. 13, it was of no significance whether Congress specifically considered vesting jurisdiction in the Court of Claims in order to conclude that the War Risk Insurance Act authorized a jury trial in a suit against the Federal Government. What is significant in the instant case is that, in allowing suits against the Government under the ADEA, Congress expressly opted for jurisdiction in the district courts and not the Court of Claims, which in lawsuits against the Government is a self-evident, alternative forum of which Congress was undoubtedly aware.

[10] One leading commentator has concluded:

"Congress may confer jurisdiction of *actions against the United States* upon a district court sitting as a court at law (or equity), as a court of claims, and as a court of admiralty. And the particular grant of jurisdiction will determine the method of trial, court or jury, in the absence of some express provision dealing with the method of trial. *Thus, absent a provision as to the method of trial, a grant of jurisdiction to a district court as a court at law carries with it a right of jury trial."* 5 J. Moore, J. Lucas, & J. Wicker, Moore's Federal Practice ¶ 38.31 [2], p. 38–239 (1981) (emphasis added; footnotes omitted).

The Court rejects the force of the statute's language. It suggests that, because of similarities between § 15 and Title VII of the Civil Rights Act of 1964, Congress may simply have wished to provide for federal-court jurisdiction because Title VII had. It argues further that Congress may also have thought that district court jurisdiction was appropriate since the statute provided for grant of equitable as well as legal relief, and that district courts, unlike the Court of Claims, are accustomed to awarding equitable relief. *Ante,* at 164, n. 12. These explanations are purely speculative. There is no basis in the legislative history for them and they are counter to the logical inferences from the language of the statute.

the conclusion that Congress intended to allow jury trials. Congress' failure to include federal employees under the ADEA when the Act was first passed

> "did not represent a conscious decision by the Congress to limit the ADEA to employment in the private sector. It reflects the fact, that in 1967, when ADEA was enacted, most government employees were outside the scope of the FLSA and the Wage Hour and Public Contracts Divisions of the Department of Labor, which enforces the Fair Labor Standards Act, were assigned responsibility for enforcing the Age Discrimination in Employment Act." S. Rep. No. 93–690, p. 55 (1974).

When the Act was amended in 1974, Congress intended that "Government employees . . . be subject to the *same protections* against arbitrary employment based on age as are employees in the private sector." 120 Cong. Rec. 8768 (1974) (remarks of Sen. Bentsen, principal proponent of ADEA extension to federal employees) (emphasis added).[11] To be sure, Congress did not provide for identical enforcement schemes for private-sector and federal-sector age discrimination complaints. But when Congress departed from the "same protections" for federal employees, *ibid.*, that it had granted private-sector employees, it did so expressly. Not only did Congress in § 15 not expressly disallow jury trials where the Federal Government is the defendant, but Congress used the same language in § 15 (c) that it had used in § 7 (c) in authorizing suits in the district courts for legal or equitable relief against private parties. This strongly sug-

---

[11] Senator Bentsen also stated:

"There is no reason why private enterprise should be subject to restrictions that are not applicable to the Federal Government.

.        .        .        .        .

"What this legislation does is to give these workers coverage under the age discrimination law and to give them a procedure to pursue their complaints." 120 Cong. Rec. 5741 (1974).

gests that it intended to make the jury trial right it approved against private employers equally applicable to ADEA suits against the Federal Government.

The strong manifestation of congressional intent from both the language and the legislative history of the 1974 amendments is enhanced by the total absence of any persuasive evidence of a contrary legislative intent. The Court argues, nonetheless, that Congress' decision in 1978 to amend the ADEA to provide explicitly for jury trials in private employer cases brought under § 7,[12] without also amending § 15 (c), demonstrates an intention to preclude jury trials against the Government. I am completely unpersuaded.

The bill which led to codification of a jury trial right in § 7 (c)(2) was introduced by Senator Kennedy *before* this

---

[12] Section 7 (c) of the ADEA, 29 U. S. C. § 626 (c) (1976 ed., Supp. III), now provides:

"(1) Any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of this chapter: *Provided,* That the right of any person to bring such action shall terminate upon the commencement of an action by the Secretary to enforce the right of such employee under this chapter.

"(2) In an action brought under paragraph (1), a person shall be entitled to a trial by jury of any issue of fact in any such action for recovery of amounts owing as a result of a violation of this chapter, regardless of whether equitable relief is sought by any party in such action."

The Court contends that the presence of express language granting a jury trial right in § 7 (c) in contrast to the absence of such express language in § 15 demonstrates that Congress "knew how to provide a statutory right to a jury trial when it wished to do so." *Ante,* at 162. I find this argument hard to fathom. The Court recognizes, as it must, that there was no such express language in § 7 (c) when this Court decided in *Lorillard* that Congress intended ADEA actions against private employers to include a jury trial right, and that the express language relied on by the Court was added two months *after Lorillard* was decided and four years *after* the identical language which was construed in *Lorillard* was added to the ADEA in § 15 (c). Therefore, unless the Court is suggesting that the unanimous holding in *Lorillard* was wrong, the Court is bound to apply the same analysis to this case.

Court decided *Lorillard*. In order to settle a conflict among the Courts of Appeals over the availability of jury trials in ADEA suits against private employers,[13] Senator Kennedy proposed an amendment to the ADEA which would state *in haec verba* that jury trials are allowed. 123 Cong. Rec. 34317–34318 (1977).[14] Senator Kennedy's amendment was adopted by the Senate without debate. *Lorillard* was subsequently decided. Thereafter, Congress passed the Kennedy amendment, with a modification proposed by the House at Conference extending the jury trial right beyond that proposed by Senator Kennedy and passed by the Senate to include claims for liquidated damages. I can discern no congressional intent to preclude the right to a jury trial in ADEA actions against the Federal Government from this sequence of events. The more plausible explanation, and the one with textual support in the relevant legislative history, H. R. Conf. Rep. No. 95–950, pp. 13–14 (1978), is that Congress understood from the *Lorillard* opinion that conferring the power to award legal relief suggested a jury trial right[15] and that the reason Congress proceeded with the Kennedy amendment was to make clear not only that suits for wages

---

[13] Compare *Rogers* v. *Exxon Research & Engineering Co.*, 550 F. 2d 834 (CA3 1977) (right to jury trial), cert. denied, 434 U. S. 1022 (1978), and *Pons* v. *Lorillard*, 549 F. 2d 950 (CA4 1977) (same), aff'd, 434 U. S. 575 (1978), with *Morelock* v. *NCR Corp.*, 546 F. 2d 682 (CA6 1976) (no right to jury trial), vacated and remanded, 435 U. S. 911 (1978).

[14] Senator Kennedy further explained: "[J]uries are more likely to be open to the issues which have been raised by the plaintiffs. Sometimes, a judge may be slightly callous, perhaps because he himself is protected by life tenure, or because he is somewhat removed from the usual employer-employee relationship. The jury may be more neutral in such circumstances." 123 Cong. Rec. 34318 (1977).

[15] Indeed, the Conference Report specifically noted that the Court had recently decided *Lorillard* v. *Pons,* and went on to state: "Because liquidated damages are in the nature of *legal relief,* it is manifest that a party is entitled to have the factual issues underlying such a claim decided by *jury.*" H. R. Conf. Rep. No. 95–950, p. 14 (1978).

could be tried before a jury, but also that suits for liquidated damages could be tried before a jury, an issue explicitly left unresolved in *Lorillard*, 434 U. S., at 577, n. 2.[16]   Moreover, that Congress did not add the same provision to § 15 that it added to § 7 is not indicative of an intent to prohibit jury trials for the additional reason that it was the conflict in the Courts of Appeals over whether employees could have a jury trial against *private employers* which prompted Senator Kennedy to introduce his bill.   There had been no parallel development in the courts interpreting § 15.   This legislative history, therefore, does not support the conclusion that the Court seeks to draw from it.

The Court also argues that the absence of any reference in § 15 to the FLSA "powers, remedies, and procedures" to which § 7 refers and upon which *Lorillard* partially relied suggests that Congress did not intend to allow jury trials against the Federal Government.   But our decision in *Lorillard* rested equally on the provision in § 7 (c) for "legal or equitable relief" as a strong and independent indication of congressional intent to allow jury trials.   In addition, the more likely explanation for the absence of any reference in § 15 to the FLSA sections referred to in § 7 (b) is that Congress intended to use existing administrative procedures "to enforce the provisions of [§ 15 (a)] through appropriate remedies, including reinstatement or hiring of employees with or without backpay."   29 U. S. C. § 633a (b) (1976 ed., Supp. III).   Prior to the 1974 amendments extending ADEA coverage to federal employees, employment discrimination complaints by federal employees were processed by the Civil Service Commission, so that it is not surprising that Congress decided to use existing administrative machinery in § 15 (b) to enforce ADEA provisions protecting federal employees.

---

[16] "The Supreme Court recently ruled that a plaintiff is entitled to a jury trial in ADEA actions for lost wages, but it did not decide whether there is a right to jury trial on a claim for liquidated damages." *Id.*, at 13.

See 39 Fed. Reg. 24351 (1974), reprinted as amended at 29 CFR §§ 1613.501–1613.521 (1980).[17] The failure to refer to FLSA procedures in § 15 apparently derives, not from a desire to limit jury trials, but from an intention to employ different *administrative* procedures for age discrimination complaints brought against the Federal Government.[18] Seen in this light, the Court's strained interpretation of the failure to refer to FLSA procedures in § 15 is totally unpersuasive.

## III

Based on the language of § 15 (c) and on the legislative history, which is consistent with my interpretation of that language, I would hold that Congress intended to allow jury trials in ADEA suits against the Federal Government.

---

[17] The Court further suggests that, because the ADEA was patterned in significant respects after Title VII, and since Title VII has been held by lower federal courts not to allow a jury trial right, it follows that § 15 does not contemplate such a right. I find this argument unpersuasive, as the Court did in *Lorillard*. The Court has previously said that, despite important similarities between Title VII and the ADEA, "it is the remedial and procedural provisions of the two laws that are crucial and there we find significant differences." *Lorillard* v. *Pons,* 434 U. S., at 584. "Congress specifically provided for both 'legal or equitable relief' in the ADEA, but did not authorize 'legal' relief in so many words under Title VII." *Ibid.*

[18] This interpretation is supported by Congress' extension of ADEA protection to employees of state and local governments, which occurred at the same time that Congress extended coverage to federal employees. Because the definitional section of the Act was amended to include state and local governments within the definition of "employer," 29 U. S. C. § 630 (b), age discrimination complaints against state and local governments can be tried to a jury for the same reason that complaints against private entities can be. Nowhere in the legislative history did Congress evince a desire to allow state and local government employees a jury trial right, while withholding the same right from federal employees. Rather, federal employees were covered in a separate section of the Act, apparently so that existing administrative machinery could be used.