Charles SIMS, Plaintiff,

v.

Richard S. SCHWEIKER, Defendant.

No. 79 C 3226.

United States District Court,
N. D. Illinois, E. D.

Sept. 22, 1982.

Department of Health and Human Services ("HHS") in violation of Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e–16 (1976). HHS has moved for dismissal for Sims's failure to satisfy jurisdictional preconditions to suit. For the reasons stated in this memorandum opinion and order, HHS' motion is granted.[1]

### Facts

In March 1975 Sims began work in Chicago with a GS–5 appointment in HHS'[2] Office of Financial Management ("OFM"). Though such an appointee could ordinarily expect promotion to GS–6 upon satisfactory completion of one year's service, Sims was not promoted when he became eligible in March 1976. On December 15, 1976 Sims complained to an HHS Equal Employment Opportunity ("EEO") Counselor, claiming discriminatory treatment because of his race and sex. Unable to resolve the complaint informally, the Counselor terminated counseling February 9, 1977.

Sims promptly filed a formal discrimination complaint, and an HHS investigation ensued from March to May 1977, followed by an unsuccessful attempt at informal adjustment in July 1977. In a lengthy November 1977 report HHS informed Sims of its Proposed Disposition of his complaint. It found Sims had not been discriminated against because of his race or sex, although HHS did identify some deficiencies in OFM's managerial personnel practices.

In early 1978, before HHS had proceeded with the formal hearing Sims had then requested, Sims's complaint was remanded to HHS by the Civil Service Commission ("CSC") for further specification of the issues in its Proposed Disposition. HHS then issued a detailed Revised Proposed Disposition in June 1979, again finding no discrimination against Sims and recommending mi-

Chanon Williams, Chicago, Ill., for plaintiff.

Dan K. Webb, U. S. Atty., Daniel C. Murray, Asst. U. S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Charles Sims ("Sims") alleges he was subjected to employment discrimination by the

---

1. Initially HHS sought dismissal of Sims's complaint, but its Reply Memorandum requests dismissal of the action "in its entirety" under Fed.R.Civ.P. ("Rule") 12(h)(3). Some HHS objections might have been raised early on under Rule 12(b)(1). *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1350, at 549 (1969). Lack of subject matter jurisdiction can how-

ever be raised at any time "by suggestion of the parties or otherwise" under Rule 12(h)(3). *See* 5 Wright & Miller § 1393, at 863–68.

2. HHS was then known as the Department of Health, Education and Welfare. To avoid confusion the agency will be referred to as HHS throughout this opinion.

nor managerial adjustments in Sims's employment record. Sims again requested a formal hearing, which was conducted by a Complaints Examiner from the EEO Commission (CSC's functional successor) in June and July 1980. On December 30, 1981 the Examiner filed an extensive report, finding no discrimination. HHS adopted the Examiner's report in full and informed Sims of its decision in May 1982.

In the meantime Sims had filed his Complaint in this Court August 3, 1979, after he had received the Revised Proposed Disposition and had renewed his request for a formal hearing before a Complaints Examiner. By joint motion of the parties, proceedings in this action were stayed July 8, 1980, pending completion of the Examiner's hearing and investigation, then in progress.

### Jurisdictional Time Limitations

HHS poses three jurisdictional objections to Sims's 12 claims of discriminatory actions identified in the Complaint and in Sims's interrogatory answers.[3] HHS contends:

1. Sims failed to present two of those actions to an EEO Counselor within 30 days of their occurrence, as required by 29 CFR § 1613.214(a)(1)(i) (1981).[4]

2. Sims failed to present another six of those actions to an EEO Counselor at all, as required by Section 1613.213(a).[5]

3. Sims failed to plead or show the other four of those actions were in fact presented to an EEO Counselor, again as required by Section 1613.213(a).

■ HHS is correct in arguing Sims's need to demonstrate compliance with those administrative requirements. They are preconditions to suit, and this Court must dismiss the claims if the requirements have not been satisfied. *Stanislaus v. Steorts,* 530 F.Supp. 72, 74 (N.D.Ill.1981) and cases cited; *see also Gaballah v. Johnson,* 629 F.2d 1191, 1198 (7th Cir. 1980); *Newbold v. United States Postal Service,* 614 F.2d 46, 47 (5th Cir.), *cert. denied,* 449 U.S. 878, 101 S.Ct. 225, 66 L.Ed.2d 101 (1980).[6]

Sims's Complaint does allege all conditions precedent to this Court's jurisdiction

---

3. One claim specified in Sims's interrogatory answers involves HHS' purported failure to establish promotion guidelines during the whole period of his employment, March 1975 to March 1978. This matter is not raised in Sims's court Complaint, however, and so the discussion below will deal with 11 claims of discrimination.

4. Section 1613.214 (this is the manner in which sections of 29 CFR will be cited hereafter, though found at 5 CFR § 713.214 (1976) at the time of Sims's original HHS complaint) provides in pertinent part:

   (a) *Time limits.* (1) An agency shall require that a complaint be submitted in writing by the complainant or his representative and be signed by the complainant. The complaint may be delivered in person or submitted by mail. The agency may accept the complaint for processing in accordance with this subpart only if—
   (i) The complainant brought to the attention of the Equal Employment Opportunity Counselor the matter causing him to believe he had been discriminated against within 30 calendar days of the date of that matter, or, if a personnel action, within 30 calendar days of its effective date; and
   (ii) The complainant or his representative submitted his written complaint to an appropriate official within 15 calendar days of the date of his final interview with the Equal Employment Opportunity Counselor.

   * * * * * *
   (4) The agency shall extend the time limits in this section: (i) When the complainant shows that he was not notified of the time limits and was not otherwise aware of them, or that he was prevented by circumstances beyond his control from submitting the matter within the time limits; or (ii) for other reasons considered sufficient by the agency.
   Sims has shown no basis for application of the provisions of Section 1613.214(a)(4).

5. That section (found at 5 CFR § 713.213(a) (1976) at the time of Sims's original HHS complaint) provides in pertinent part:

   (a) An agency shall require that an aggrieved person who believes that he or she has been discriminated against because of race, color, religion, sex, or national origin consult with an Equal Employment Opportunity Counselor to try to resolve the matter.

6. *Zipes v. TWA, Inc.,* —— U.S. ——, 102 S.Ct. 1127, 71 L.Ed.2d 1127 (1982), does not require a different result. *Zipes (id.* at 1132–33) held Title VII's statutory time limit for filing suit against private employers is not a jurisdictional prerequisite to suit. At least two Courts of Appeals have opined the *Zipes* analysis also applies to Title VII actions against the federal government. *Milam v. United States Postal Service,* 674 F.2d 860, 862 (11th Cir. 1982); *Saltz v. Lehman,* 672 F.2d 207, 208 (D.C.Cir.

have been complied with. But his only reference is to satisfying 42 U.S.C. § 2000e–16(c): a federal employee may file a civil action against an agency only "after one hundred and eighty days from the filing of [his] initial charge ... if aggrieved ... by the [agency's] failure to take final action on his complaint."

■ That is not enough, for properly promulgated administrative regulations like those relied on by HHS have the force of law. *United States v. Nixon,* 418 U.S. 683, 695–96, 94 S.Ct. 3090, 3101, 41 L.Ed.2d 1039 (1974). Every Title VII complainant against the federal government must seek relief in his agency according to applicable regulations as a precondition to suit. *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976); *Stanislaus,* 530 F.Supp. at 74.

■ Sims's failure specifically to allege satisfaction of those administrative requirements is a jurisdictional defect in pleading. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1212, at 102; § 1350, at 549 (1969). Because the flaw could be cured by repleading, however, this opinion will proceed to the merits of HHS' contentions. For that purpose, the purportedly discriminatory actions fall into three time categories:

(1) those preceding Sims's December 15, 1976 complaint to the EEO Counselor;

(2) those occurring after conciliation efforts ended February 9, 1977;

(3) those occurring during the counseling period.

### HHS' Pre-December 15, 1976 Actions

■ Only one of the two matters in this category—Sims's non-promotion complaint—requires discussion.[7] On that score Sims admits he knew his promotion was not forthcoming at the end of March 1976, nine months before he complained to the EEO Counselor. That delay is fatal under the predecessor of Section 1613.214(a)(1)(i).[8] Nor does HHS' later investigation of Sims's formal promotion discrimination complaint foreclose this Court's independent review of the timeliness of his initial filing. *Goldman v. Sears, Roebuck & Co.,* 607 F.2d 1014, 1017 (1st Cir. 1979), *cert. denied,* 445 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

### HHS' Post-February 9, 1977 Actions

By definition the five Sims claims based on conduct after EEO counseling efforts ended February 9, 1977 could not comply with Section 1613.213(a). Only one category of such claims raises a possible question: Sims's claim of retaliatory discrimination.

■ Courts disagree as to whether such a claim against a *private* employer is itself subject to Title VII administrative exhaustion and filing requirements. Com-

---

1982). There is a counter argument: Sovereign immunity principles teach the United States may not be sued without its consent, and the statutory and administrative terms of its consent define a court's jurisdiction to entertain the suit. *See Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *Brown v. GSA,* 425 U.S. 820, 832, 96 S.Ct. 1961, 1967, 48 L.Ed.2d 402 (1976). Those competing views need not be resolved here, for application of the *Zipes* doctrine would give Sims no more than the equitable defenses afforded by Section 1613.214(a)(4)—and as n.4 states, he can find no comfort there.

7. Sims also asserts a 16-hour AWOL ruling was discriminatory. But even on his own terms (Sims's Mem. 3) he knew of the ruling by November 4, 1976, more than 30 days before his December 15, 1976 EEO complaint. That put him out of time (except for the possible argument that EEOC considered the claim any-

way, an argument hereafter rejected in the text of this section).

8. Sims's Memorandum argues for the first time that denial of promotion after the first year had passed was a "continuing" violation of his rights. Our Court of Appeals has recently approved the notion of "continuing violation" in promotion situations when "it [is] difficult to pinpoint the exact day the 'violation' occurred." *Stewart v. CPC International, Inc.,* 679 F.2d 117, 120 (7th Cir. 1982). Here Sims admits he was aware of his failure to be promoted in late March 1976. *Cf. Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (violation occurred when plaintiff was informed of tenure decision, not when position actually expired). That admission puts Sims in the same position as one officially notified he would not be promoted.

pare *Bickley v. University of Maryland,* 527 F.Supp. 174, 176–79 (D.Md.1981) with *Haynes v. Mark,* 520 F.Supp. 1183, 1184 (D.Colo.1981). Such disagreement cannot however extend to the federal government as employer. Sovereign immunity principles require that *every* claim against the United States, including one of retaliatory discrimination, must meet the administrative preconditions to suit. Because the United States has consented to be sued under 42 U.S.C. § 2000e–16 and applicable regulations, "the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981), *quoting United States v. Sherwood,* 312 U.S. 584, 586, 61 S.Ct. 767, 769, 85 L.Ed. 1058 (1941).

 Accordingly all complaints arising after the counseling period, like those arising before it, are barred from suit. It only remains to discuss events during the counseling period itself.

### HHS' December 15, 1976 to February 9, 1977 Actions

Three of Sims's four claims of allegedly discriminatory conduct during the counseling period stem from denial of requested training.[9] In his responses to HHS' interrogatories Sims located three such denials in January 1977. Given that timing, those training denials could not of course have prompted Sims's original contact with the EEO Counselor. From that fact HHS asks this Court to decide—as a matter of fact—the lack-of-training complaints were not specifically brought to the Counselor's attention, so that the administrative regulation was not complied with.

[10] Matters are not quite so simple. In the EEO Counselor's report she states:

9. Sims's other complaint during that period is based on a 2-hour AWOL charge communicated to him in January 1977. It fails for two reasons:

    1. Sims has not shown the matter was presented to the EEO Counselor for resolution as required by Section 1613.213(a).

    2. As reflected in Section VIIIB of the original (November 3, 1977) Proposed Disposition, the matter was resolved through union arbitra-

[Sims] feels he is being treated "different" from other employees re office rules, training, leave, and has not been promoted because of discrimination.

To what does "training" in that report refer? HHS' November 3, 1977 Proposed Disposition says that "the most significant training" Sims complains of "is, for the most part, related to his training for a special assignment, the '1400 report,' in February or March 1976." That item is of course barred by the 30-day limitation, so discussing it with the Counselor would have been unavailing for current purposes.

What is more significant, however, is that it appears the Counselor's "Record of Pre-Complaint Processing" (in which the quoted sentence appears) was likely prepared at the time of the *first* interview (December 16, 1976)—note its use of the present tense throughout (as to what Sims "feels"). Under those circumstances Sims has provided no evidence at all that the alleged training denials during the counseling period—the complaints now sued upon—were also the subject of counseling. That being so, Sims fails for not having carried his burden to demonstrate he has satisfied the necessary preconditions for suit on those items. *Stanislaus,* 530 F.Supp. at 74.[10]

### Conclusion

Sims has failed to establish his satisfaction of the administrative preconditions to suit. This action is dismissed for want of subject matter jurisdiction.

tion (the arbitration award is attached to the government's R.Mem.). See *Strozier v. General Motors Corp.,* 635 F.2d 424 (5th Cir. 1981).

10. All Sims has pointed to is the reference to those items in the Proposed Disposition—much later than the counseling—of his formal EEO complaint (also filed after the counseling). Because the burden *is* his and not the government's, that cannot suffice.