**UNITED STATES of America, Plaintiff,**

v.

**QUICK INTERNATIONAL COURIER, INC., Robert Mitzman, Dominique Brown, Vincent Farella, Precision Mailers, Inc., and Greg Smith, Defendants.**

**Civil No. 3–95–381.**

United States District Court,
D. Minnesota,
Third Division.

July 16, 1996.

Joan D. Humes, Assistant United States Attorney, Minneapolis, MN, for Plaintiff.

L. Peter Farkas, Mary Boney Denison and Richard S. Toikka, Graham & James, Washington, D.C.; and Robert L. Barrows, Leonard, Street and Deinard, Minneapolis, MN, for Defendants Quick International Courier, Inc., Mitzman, Brown, and Farella.

Barry O'Neil, James M. Lockhart, Lommen, Nelson, Cole & Stageberg, Minneapolis, MN, for Greg Smith.

**MEMORANDUM OPINION AND ORDER**

KYLE, District Judge.

**Introduction**

The United States commenced this action on behalf of the Postal Service alleging the

Defendants engaged in an illegal international "remailing" scheme. The United States seeks damages and civil penalties under the False Claims Act, 31 U.S.C. § 3729–3731, and, in the alternative, damages for common law fraud and unjust enrichment. Defendant Quick International Courier, Inc. ("Quick") subsequently filed a Counterclaim against the Postal Service asserting a claim for unfair competition and publishing false statements under the Lanham Act, 15 U.S.C. § 1125(a). Jurisdiction arises under 15 U.S.C. § 1121(a); 28 U.S.C. §§ 1331, 1345 and 1339; 31 U.S.C. § 3730; and 39 U.S.C. §§ 401 and 409. This matter is currently before the Court on Defendants Quick, Robert Mitzman, Dominique Brown, and Vincent Farella's (collectively, the "Quick Defendants")[1] Motions for Summary Judgment, the United States' Cross Motion for Summary Judgment, and the United States' Motion to Dismiss the Counterclaim.

## Background

### I. Parties

The Postal Service is an "independent establishment" of the executive branch of the federal government with its principal place of business in Washington, D.C. (Pl.'s Answer to Counterclaim; ¶ 55.)

Quick is a New York corporation engaged in the mail courier business; Quick maintains an office in Minneapolis, Minnesota. (Compl.¶ 5.) At all times relevant to this action, Defendant Robert Mitzman was the President of Quick, Defendant Dominique Brown was the Vice–President of Quick, and Defendant Vincent Farella was the Director of the Remail Division of Quick. (*Id.* ¶ 5.)

### II. Factual Background

The Postal Service contends it is illegal to transport mail from an originating country (A) for mail entry through a second country (B) for the purpose of remailing back to the originating country (A). (Compl.¶ 8.) This is referred to as an "ABA" mailing. The Postal Service alleges that between October, 1992 and March, 1994, Quick orchestrated an ABA

mailing scheme whereby mail originating in the United States was sent in bulk to Barbados for remailing back to the United States. (*Id.* ¶ 9.) The rates charged for Barbados First Class mail sent to addresses within the United States are significantly lower than the rates charged for a First Class letter originating within the United States. (*Id.* ¶¶ 9–12.) Thus the Defendants profited by shipping bulk mail to Barbados, which was then unpacked, stamped with the less expensive Barbados postage, labeled with Barbados return addresses, and remailed to United States addresses as First Class mail. The Postal Service maintains that a majority of the remailed items were sent on behalf of Defendant PMI, and its client, a Florida tour promotion company. (*Id.* ¶ 13.) The Postal Service also claims that, with the knowledge of the Defendants, this Florida company produced false bills of lading to the Postal Inspection Service in order to disguise the ABA mailing scheme. (*Id.* ¶¶ 17–18.) These bills of lading showed the Florida company's Canadian office, rather than Barbados, as the origin of mail sent into the United States. (Farkas Dec. ¶ 23.)

## Discussion

### I. Standard of Decision

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment. Under that Rule:

> [summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c).

Initially, the movant bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548,

---

1. The United States named Precision Mailers, Inc. and its president, Greg Smith, as additional defendants in this action. The United States subsequently settled—but has not achieved a stipulation of dismissal of—its claims against Smith. (*See* Pt. C, *infra*.) Precision Mailers is insolvent, inactive, and has not responded to the parties' motions; it remains a nominal Defendant.

2552, 91 L.Ed.2d 265 (1986). In evaluating the movant's showing, the evidence offered by the non-moving party is to be believed and all justifiable inferences therefrom are to be drawn in a light most favorable to that party. *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986). The moving party will be entitled to judgment as a matter of law "when the nonmoving party had failed to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.'" *Barge v. Anheuser–Busch, Inc.*, 87 F.3d 256, 257–58 (8th Cir.1996) (quoting *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552–53) Summary judgment is particularly appropriate where, as in the present case, the unresolved issues are primarily legal rather than factual. *Schrier v. Halford*, 60 F.3d 1309, 1310 (8th Cir.1995); *Uhl v. Swanstrom*, 79 F.3d 751, 754 (8th Cir.1996).

## II. Analysis

There are six separate motions before the Court: (1) the Quick Defendants' Motion to Dismiss or for Summary Judgment; (2) the United States' Motion for Summary Judgment on the Quick Defendants' Counterclaims; (3) the United States' Motion for Dismissal of Defendant Greg Smith and Counts II and III of the Complaint; (4) Defendant Mitzman's Motion for Summary Judgment; (5) Defendant Brown's Motion for Summary Judgment; and (6) Defendant Farella's Motion for Summary Judgment.

### A. Quick Defendants' Motion for Summary Judgment

■ The Complaint focuses on 26 ABA mailings from Barbados and 5 bills of lading as previously described. The United States claims that these two sets of documents violate the False Claims Act (*"FCA"*) which provides in pertinent part:

Any person who ... knowingly makes, uses, or causes to be made or used, *a false record or statement* to conceal, avoid, or decrease *an obligation to pay or transmit money or property to the Government*, is liable to the United States Government for a civil penalty of not less than $5,000 and

not more than $10,000, plus 3 times the amount of damages which the Government sustains because of the act of that person.

31 U.S.C. § 3729(a)(7) (emphases added). Thus to establish a prima facie FCA § 3729(a)(7) claim, the United States must show that the Quick Defendants made a false statement, that such a statement was made to avoid or decrease a payment obligation, and that the Postal Service constitutes "the Government" for the purposes of the FCA. *See Wilkins ex rel. United States v. State of Ohio*, 885 F.Supp. 1055, 1059 (S.D.Ohio 1995).

The Quick Defendants claim the United States has failed to establish a prima facie case under § 3729. They argue: (1) the United States has not identified an "obligation" requiring Quick to pay greater than the Barbados postage rates on the 26 remailings or to accurately complete the 5 bills of lading; (2) the 26 mailings do not contain "false statements"; (3) the 5 bills of lading are not statements made to avoid an obligation to "transmit money" to the Government; (4) the United States—which is to say the Postal Service—does not have standing to pursue its FCA claim because the Postal Service is not the "Government" for the purposes of the FCA; and (5) interpreting the FCA to prohibit ABA remailing violates public policy. The Court need only reach the first of these issues.

The United States has not identified an "obligation" entitling the Postal Service to additional payment for Quick's ABA mailings. When it initiated this action, the United States indicated it relied on the Postal Service's International Mail Manual ("IMM") as the source of this "obligation." Specifically, the United States alleged:

7. At all times relevant to this complaint, the United States Postal Service International Mail Manual required that mailings sent to United States addresses, by or on behalf of persons or firms whose residence or place of business is in the United States, must pay United States postage. *International Mail Manual § 790–792.*

8. At all times relevant to this complaint, it was illegal to transport mail from an originating country (A) for mail entry through a second country (B) for the pur-

pose of remailing back to the originating country (A). This type of mailing scheme is commonly referred to as an "A–B–A" mailing. *International Mail Manual § 790–792.*

(Compl. ¶¶ 7–8 (emphases added).) These two paragraphs are the only paragraphs which purport to identify the essential FCA "obligation." Similarly, in its answer to interrogatories, the United States confirmed that "the Postal Service contend[s] that ... IMM 790 ... imposed upon Quick an 'obligation' to the Postal Service within the meaning of 31 U.S.C. § 3729";[2] and in its answers to requests for admissions, the United States stated that IMM 790 "requires the payment of domestic postage on ABA remail." (Quick Defs.' Ex. 17 at 2.) Finally, in its Motion for Summary Judgment, the United States asserted that "[t]he complaint focuses on 26 mailings which were shipped from the United States companies to Barbados, West Indies, for mailing back into the United States using West Indies postage *in violation of the International Mail Manual § 790–792*" (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 2 (emphasis added).)

In response to the Complaint and the Postal Service's representations in discovery, the Quick Defendants filed a Memorandum of Law attacking the ability of the Postal Service to create an FCA "obligation" through the IMM. After receiving this Memorandum, the United States apparently changed its position with respect to the source of the "obligation" to not engage in ABA remailing. The United States clearly conceded that the source of the FCA "obligation" is not the IMM or a federal statute.[3] During the course of this litigation, the United States has also clearly conceded that the source of the "obligation" not to engage in ABA remailing is not an implied or express contract. (Gautreaux Dep. at 66–68, attach. as Defs.'

Ex. 25.) Rather, the United States currently claims:

> The obligation asserted in this case is the obligation to put a 29–cent stamp on a mailpiece that is being mailed to a United States address from a United States address. The requirement to pay domestic postage on domestic mail is unambiguous. It is this obligation the United States seeks to enforce in this case.

(Pl.'s Mem. in Opp'n to Def. Quick's Mot. for Summ. J. at 19.)

The Court finds the United States' "29–cent rule" does not impose a legal obligation to pay any additional monies to the Postal Service for engaging in the ABA remailing that occurred in this case. Here, the Quick Defendants shipped bulk mail to Barbados. Although not clear from the Complaint, the Quick Defendants either did not use the Postal Service to ship this bulk mail or shipped it through the Postal Service and paid the proper fee. The individual pieces of mail were then sent from Barbados—not the United States—to the United States, and the Barbados Post Office paid the Postal Service the amount it bargained for to deliver this mail to domestic addresses in the United States. As such, these pieces of mail were in fact international. They were not mailed from the United States, they were mailed from Barbados. And as a result, full "domestic" postage is not owing. The Postal Service assumes, without support, that this mail is "domestic." This assumption begs the question. The Postal Service has identified no authority for its peculiar construction of where mail "originated," and absent a federal law or enforceable federal regulation, there is no legal obligation to pay additional money for ABA remailing. While the Postal Service may reasonably seek to close the ABA remailing "loophole," the FCA is not

---

**2.** The Quick Defendants did not attach a copy of this interrogatory to its Memorandum of Law. They did, however, quote this provision in their Reply brief and at argument, and the United States did not object or otherwise indicate this quote is not accurate.

**3.** Specifically, the United States represented that "it does not seek remedies under international mail regulations"; Quick's challenge "to the

scope of IMM 790 ... [was] inapposite"; the Postal Service "does not rely on IMM 790 ... for words of prohibition or available remedies"; whether Quick's ABA remailing violates the IMM "is irrelevant"; and, most importantly, that "the international regulatory scheme governing ABA remail does not impose an 'obligation' to pay postage." (Pl.'s Mem. in Opp'n to Quick Defs.' Mot. for Summ. J. at 11, 12, 13, and 18.)

the proper legal mechanism for doing so in this case. If this "loophole" is to be closed, it should be accomplished by the development of an enforceable regulation or legislative amendment to the PRA. Bootstrapping ABA remailing into an FCA claim is not the appropriate vehicle.

Stated another way, the United States has not *demonstrated* an "obligation" for the purposes of the FCA requiring Quick to pay greater than the Barbados postage rates for ABA remailings in this case. As a result, the United States has failed to establish an essential element of an FCA violation, and its Complaint against the Quick Defendants must be dismissed.[4]

### B. The United States' Motion for Summary Judgment

■ In its Counterclaim, the Quick Defendants allege that the Postal Service engaged in unfair competition in violation of the Lanham Act, 15 U.S.C. § 1125(a), by filing its Complaint in this action and by making various false and/or misleading statements about Quick. The United States claims the Postal Service is entitled to sovereign immunity and that it has not waived its sovereign immunity for Lanham Act claims.[5]

The Postal Service's waiver of sovereign immunity is contained in the PRA, in which Congress expressly provided that the Postal Service may "sue and be sued." 39 U.S.C. § 401(1). However, the PRA also incorporated the provisions of the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2671 *et seq.*, and in doing so, the United States argues Congress expressly limited the waiver of immunity contained in § 401(*l*)'s "sue-or-be-sued" clause. Specifically, the PRA states that "[t]he provisions of chapter 171 and *all other provisions of title 28 relating to tort claims shall* apply to tort claims arising out of activities of the Postal Service." 39 U.S.C. § 409(c) (emphasis added). The United States correctly notes that a Lanham Act violation is a statutory tort. See *Toro Co. v. R & R Prod. Co.*, 787 F.2d 1208, 1214 (8th Cir.1986) (observing that the Lanham Act "creates a federal tort of unfair competition"). As a result, the United States argues that the Postal Service has waived its sovereign immunity for a Lanham Act violation only if such a violation satisfies the requirements of the FTCA. The Post Office then argues, correctly, that the waiver of sovereign immunity in the FTCA does not include Lanham Act violations.[6]

---

4. The claims against the individual Quick Defendants are dependent upon the supposition that Quick's ABA remailing constitutes an FCA violation. In the absence of such a violation, these claims clearly fail as a matter of law, and the Court need not resolve the individual Defendants' alternative grounds for summary judgment set forth in their respective memoranda.

5. Quick does not challenge the Postal Service's claim that sovereign immunity applies in the absence of a waiver, nor would such a claim be warranted. Quick's claim against the Postal Service is a suit against the Government for the purposes of sovereign immunity. See *Allied Coin Inv., Inc. v. United States Postal Serv.*, 673 F.Supp. 982, 984 (D.Minn.1987) (citing *Anderson v. United States Postal Serv.*, 761 F.2d 527, 528 (9th Cir.1985); *Sportique Fashions, Inc. v. Sullivan*, 597 F.2d 664, 665 (9th Cir.1979)). As sovereign, the United States is "immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Id.* (citing *Lehman v. Nakshian*, 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981)). Thus, " 'if Congress waives the government's sovereign immunity from suit, a plaintiff's rights are limited to the terms of the government's consent

to be sued.' " *Id.* (quoting *United States v. Testan*, 424 U.S. 392, 399, 96 S.Ct. 948, 953, 47 L.Ed.2d 114 (1976)).

6. The FTCA is a waiver of the federal government's sovereign immunity for certain torts committed by federal employees. *Lehman v. Nakshian*, 453 U.S. 156, 161, 101 S.Ct. 2698, 2702, 69 L.Ed.2d 548 (1981). The FTCA authorizes suits against the federal government:

> for money damages ... caused by negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). Under the Act, the federal government is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The waiver of sovereign immunity under the FTCA is limited to claims predicated on such liability, and, consequently, federal jurisdiction lies only for claims which state a cause of action under the applicable state law. *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477–78, 114 S.Ct. 996, 1001,

In response, the Quick Defendants agree that the waiver of sovereign immunity contained in the FTCA does not include a waiver for ·Lanham Act claims.[7] The Quick Defendants argue, however, that the "sue-and-be-sued" clause in § 401(1) should not be limited by the reference to the FTCA in § 409(c). The Quick Defendants rely upon cases which hold that the "sue-and-be-sued" clause in the PRA must be construed broadly and that the Postal Service should be treated like other private entities which are generally amenable to suit. *See e.g. Franchise Tax Bd. of California v. United States Postal Serv.*, 467 U.S. 512, 517–18, 104 S.Ct. 2549, 2552–53, 81 L.Ed.2d 446 (1984) (observing that "when Congress establishes ... an agency, authorizes it to engage in commercial and business transactions with the public, and permits it to 'sue and be sued,' it cannot be lightly assumed that restrictions on that authority are to be implied") (internal quotation omitted).

The issue here is simply whether § 409(c) incorporates the limitations to the waiver of sovereign immunity for tort claims in the FTCA. This Court concludes that it does. Although there is a presumption that a "sue-and-be-sued" clause renders a governmental entity amenable to suit to the same extent as a private enterprise, the Second Circuit has expressly held that by incorporating the provisions of the FTCA, "Congress explicitly has narrowed the waiver of immunity contained in the 'sue-or-be-sued' clause of [PRA] section 401(1)." *Active Fire Sprinkler Corp. v.*

*United States Postal Serv.*, 811 F.2d 747, 753 (2nd Cir.1987). Courts in this and other districts have similarly specifically held that the FTCA's limitation on the Government's waiver of sovereign immunity operates, through § 409(c), to restrict the "sue-and-be-sued" clause in § 401(1) for ·claims against the Postal Service sounding in tort. *See Allied. Coin Inv., Inc. v. United States Postal Serv.*, 673 F.Supp. 982, 984–85 & n. 4 (D.Minn.1987); *see also Fridman v. Postmaster* General, No. 95–4049(CPS), 1996 WL 90543 at * 1–2 (E.D.N.Y. Feb.26, 1996); *Gasden v. United States Postal Serv.*, No 95–0734(MBM), 1995 WL 758775 at *4–5 (S.D.N.Y.1995); *Gownaris v. United States Postal Serv.*, No. 87–3403, 1988 WL 61741 at * 1 (E.D.Pa.1988). The Court will follow these precedents.[8] Quick has not demonstrated the Postal Service has waived its sovereign immunity for a Lanham Act violation. The United States's Motion for Summary Judgment will accordingly be granted.

### C. United States' Motion for Dismissal of Defendant Greg Smith and Counts II and III of the Complaint

The United States seeks an interlocutory order dismissing Greg Smith, the president of Defendant Precision Mailers, and the common law claims of fraud and unjust enrichment as against all the Defendants alleged in Counts II and III of the Complaint. The United States represents that it has settled

127 L.Ed.2d 308 (1994). The Lanham Act is not a state law and as such, the FTCA's waiver of sovereign immunity does not include a waiver for Lanham Act claims.

**7.** The Quick Defendants also claim the United States waived the defense of sovereign immunity because it was not pled as an affirmative defense. Based on this failure to plead, the Quick Defendants have also asked for leave to conduct additional discovery concerning the issue of immunity if the Court finds it has not been waived. The Court need not reach this issue.

**8.** Quick argues that under *Federal Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994), the "sue-and-be-sued" clause is sufficient to waive the Postal Service's immunity, irrespective of FTCA limitations. In *Meyer*, the Supreme Court held that a "sue-and-be-sued" clause in the Federal Savings and Loan Insurance Corporation's ("FSLIC") organic stat-

ute constituted a waiver of sovereign immunity for constitutional tort claims. The issue in *Meyer* was whether the limitation to the governmental sovereign immunity contained in the FTCA should apply to narrow the FSLIC's waiver of sovereign immunity for a constitutional tort claim. The Court declined to incorporate the FTCA's limitation because Congress had not demonstrated a clear intent that the FTCA's limitation should be included to narrow the FSLIC's waiver.

The present case differs from *Meyer* in one critical respect. The waiver in the FSLIC's organic statute did not incorporate the FTCA's sovereign immunity limitations. In contrast, the PRA *expressly* limits the waiver of sovereign immunity it contains by subjecting it to the restrictions in the FTCA. So, unlike the waiver considered in *Meyer*, in this case, Congress has clearly and expressly demonstrated its intent to limit the effect of the PRA's "sue-and-be-sued" clause. The Court will adhere to that limitation.

its dispute with Smith and no longer wishes to pursue its common law claims against any of the Defendants. The United States sent the Defendants a stipulation of dismissal, which included a provision that the claims were to be dismissed "without cost to any party." The Quick Defendants have refused to sign the submitted stipulation of dismissal because such a dismissal may preclude them from obtaining attorneys fees to which they believed they will be entitled under the Equal Access to Justice Act, 28 U.S.C. § 2412 (1994).

Because the decisions in Parts A and B, *supra*, have disposed of the remainder of the Complaint and the Counterclaim, the Court need not resolve whether an interlocutory order dismissing Counts II and III "without costs" is appropriate. These Counts will be dismissed with prejudice and final judgment will be entered. Should the Quick Defendants seek "costs," the Court will resolve, on the merits, whether they will be entitled to them when that issue is ripe.

### Conclusion

Based on the foregoing, and upon all the files, records, and proceedings herein, **IT IS ORDERED** that:

(1) Defendants Quick International, Inc., Robert Mitzman, Dominique Brown, and Vincent Farella's *Motions for Summary Judgment* (Doc. Nos. 52, 54, 56, 58) are **GRANTED** and all of the claims against them in the Complaint (Doc. No. 1) are **DISMISSED WITH PREJUDICE;**

(2) Plaintiff United States' Motion for Summary Judgment on Quick's Counterclaim (Doc. No. 61) is **GRANTED** and the claim asserted against the United States in the Counterclaim is **DISMISSED WITH PREJUDICE;** and

(3) In view of the dismissal of all claims in the Complaint, Plaintiff United States' Motion to Dismiss Defendant Greg Smith and to Dismiss Counts II and III of the Complaint (Doc. No. 47) is **DENIED AS MOOT.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**