[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 27, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-16216
Non-Argument Calendar
_____

D. C. Docket No. 04-00526-CV-OC-10-GRJ

MICHAEL F. POWERS,

Plaintiff-Appellant,

versus

U.S. DEPARTMENT OF AGRICULTURE,
MICHAEL JOHANNS, in his official
capacity as Secretary of Agriculture,
KEVIN KELLEY, in his official
capacity as Florida State Executive Director,
RAY NAEYAERT, in his official
capacity as Chief of Florida FSA Loans,
LEON BRACHT, in his official
capacity as USDA Service Center, Lake County,
UNITED STATES OF AMERICA, acting
through the Farm Services Agency,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(August 27, 2007)**

Before BLACK, MARCUS and KRAVITCH, Circuit Judges.

PER CURIAM:

Michael Powers, proceeding pro se, appeals the district court's grant of summary judgment in his civil action brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), and the Administrative Procedures Act ("APA"), 5 U.S.C. § 702. For the reasons that follow, we affirm.

## I. BACKGROUND

### A. Statutory and Regulatory Framework

The Farm Service Agency ("FSA") is part of the U.S. Department of Agriculture. The FSA, which has the authority to make loans to family-farm-size farmers and ranchers for land purchases, may secure its loans by placing liens on property acquired with its funds. 7 U.S.C. §§ 1923(a), 1927(c). In the event of a default, the FSA may acquire the land on which it has a lien—known as "inventory property"—and may sell such land if it can be used for agricultural purposes. 7 U.S.C. § 1985(a); 7 C.F.R. § 1955.103. Within 15 days after acquiring suitable inventory property, the FSA is required to publicly advertise the property for sale, with a preference for selling to beginning farmers. 7 U.S.C. § 1985(c)(1)(A). But "no later than the date of acquisition," the FSA must provide the original defaulted borrower with notice of an opportunity to apply for homestead protection, which

2

enables the borrower to lease the property for later repurchase. 7 C.F.R. §§ 1951.911, 1955.106(a). The original borrower must request homestead protection within 30 days of the date of acquisition. Id. § 1951.911(b)(2)(iii). "After homestead protection rights have expired, suitable farmland must be sold in the priority outlined" by the relevant regulations. Id. § 1955.107(a)(2). In addition, via a Memorandum of Understanding, the U.S. Fish and Wildlife Service has 45 days from notification by the FSA to comment on wetlands determinations. See 7 C.F.R. § 1955.137.

Within a specified number of days (75 days in 1998)[1] of acquiring suitable inventory property, the FSA is required to offer the property for sale to qualified beginning farmers at current market value based on a current appraisal. 7 U.S.C. § 1985(c)(1)(B)(i). If the FSA does not receive an acceptable offer via this process, it may offer the property to any interested party at a public sale. 7 U.S.C. § 1985(c)(1)(C). If the FSA does not receive an acceptable bid via public sale, it may negotiate a sale at the best price obtainable. 7 U.S.C. § 1985(c)(1)(C). And "separate sales of portions of the property, such as *growing crops* . . . may be permitted if a better total price for the property can be obtained in this manner." 7 C.F.R. § 1955.140(a) (emphasis added).

---

[1] In 2002, this time limit increased to 135 days. See 7 U.S.C. § 1985(c)(1)(B)(i) (2002).

3

### B. Facts Underlying Powers' Complaint

On July 9, 1998, the FSA obtained title to eight parcels of orange-grove land in Florida via "voluntary foreclosure." On July 15, 1998, the FSA notified the original borrower regarding her homestead rights, but the borrower did not seek protection within the available 30-day period. At the end of the 30-day period, the FSA then sought a wetlands determination on the property from the U.S. Fish and Wildlife Service, which had 45 days from notification to comment on the wetlands issue.

The FSA combined the eight parcels into three groves of 7.5, 21.34, and 132.5 acres, and on October 11, 1998, 94 days after the FSA had acquired the property, the agency advertised the three groves for sale to beginning farmers. The advertisement stated the groves did not include the 1998-99 fruit crop. The FSA separately sold the crops from the three groves some time in October 1998.

In November 1998, Powers, a qualified beginning farmer, applied for an FSA loan to acquire the 21-acre grove, and on the same day, he and the FSA entered into a contract for sale of that grove. Like the FSA's advertisement, the contract stated that the sale did not include the 1998-99 crop. The sale closed in January 1999 and Powers received the grove without the fruit. The deed states that ownership of the 1998-99 fruit crop remains with the grantor.

4

After the FSA failed to receive any offers from beginning farmers on the 132-acre grove, the FSA advertised the grove for sale by sealed bids. These advertisements advised that the sale would exclude the 1998-99 crop. The FSA appraised the value of the 132-acre grove at $615,500, but the highest sealed bid was $456,101, received from Powers and his business partner C.L. Hiatt. The FSA rejected all of the bids as being too far below the appraised value. In a letter dated February 1, 1999, the FSA notified Powers and all other bidders that their bids had been rejected and advised all interested persons to submit their best and final offers by February 17, 1999. Powers and his partner submitted a bid of $405,930 by a letter dated February 23, 1999. The FSA again rejected Powers' and all other bids as unacceptable.

After the failure of the sealed-bid process, the FSA entered into a negotiations period to sell the 132-acre grove. On April 8, 1999, Powers made an offer to lease and/or purchase the grove, but Ray Naeyaert, Chief Loan Officer for the FSA's Florida office, rejected the offer by letter dated May 17, 1999 on the grounds that the FSA did not have the authority to lease the property. Instead, Naeyaert offered to sell the grove to Powers for $460,000 in cash. On May 20th, Powers accepted Naeyaert's sale proposal, but the sale fell through when Powers was unable to obtain financing and provide the required 10% down payment.

On October 18, 1999, Powers made another offer to purchase the 132-acre grove for $460,000, this time personally presenting a check to Naeyaert for $46,000 to satisfy the 10% down payment. By that time, however, the grove was bearing fruit worth approximately $100,000, which had grown during the 1999-2000 season, raising the appraised price to more than $700,000. Accordingly, on October 19, 1999, Naeyaert contacted Powers' by telephone and said that the FSA would not sell the 132 acres for less than $550,000. Powers rejected the counteroffer and made no further attempts to purchase the grove. On February 21, 2001, the FSA sold the 132-acre grove to another buyer for $485,000, transferring the title to that purchaser on June 20, 2001.

## C.  Procedural History

On October 8, 2002, Powers filed an administrative tort claim with the FSA seeking $2,230,000 in damages in connection with his failed attempts to buy the 132-acre grove and the 1998-99 citrus crop on the 21-acre grove. On July 11, 2003, the FSA denied the claim. Powers filed a request for reconsideration, which was denied on May 27, 2004.

On November 26, 2004, Powers, proceeding pro se, filed a complaint in the district court against U.S. Secretary of Agriculture Ann Veneman, Executive Director of the FSA's Florida office Kevin Kelley, Chief Loan Officer for the

6

FSA's Florida office Ray Naeyaert, and U.S. Department of Agriculture Loan Officer Leon Bracht (collectively "Defendants" or "Appellees"), in their official capacities. Powers also named the United States and the FSA as defendants. The original complaint contained a claim for money damages under the FTCA, alleging that the Defendants breached their fiduciary duty to Powers when they failed to advertise and offer the citrus groves for sale within the statutory period and when they failed to include the 1998-99 citrus crop in the sale of the 21-acre grove. Powers also requested an injunction setting aside the June 20, 2001 sale of the 132-acre grove, restoring Powers' "preferential right" as a beginning farmer to purchase that grove, and requiring that the FSA use the $615,5000 appraisal price during the resale process. Powers then amended his complaint, adding a claim for declaratory relief in the form of an order stating that the FSA was obligated to offer and sell the groves to Powers within the statutory time frame.

Following discovery, the Defendants filed a joint motion for summary judgment, which the district court granted. The court first concluded that the individual defendants were not proper parties under the FTCA. The court further concluded that the FTCA claims were nonetheless time-barred. Regarding the APA claims for injunctive and declaratory relief, the court concluded that the FSA's actions were not arbitrary and capricious. Powers now appeals.

7

## II. DISCUSSION

On appeal, Powers argues that the district court erred in granting summary judgment to the Defendants because (1) his FTCA claim was not time-barred and (2) the FSA's failure to offer and sell the groves within the statutory time period was unreasonable and violated the agency's own regulations.

We review a district court's grant of summary judgment de novo, viewing the evidence and all factual inferences in a light most favorable to the non-moving party, and applying the same legal standard used by the district court. Johnson v. Bd. of Regents, 263 F.3d 1234, 1242-43 (11th Cir. 2001).

### A. FTCA Claims

The district court's interpretation and application of a statute of limitations is a question of law that we review de novo. Harrison v. Digital Health Plan, 183 F.3d 1235, 1238 (11th Cir. 1999).

"It is well established that the FTCA is a specific waiver of the sovereign immunity of the United States and must be strictly construed." Phillips v. United States, 260 F.3d 1316, 1318 (11th Cir. 2001). "By enacting the FTCA time limitation period, 28 U.S.C. [§] 2401(b), the United States has placed a condition on that waiver." Phillips, 260 F.3d at 1318. "[L]imitations and conditions upon which the Government consents to be sued must be strictly observed and

8

exceptions thereto are not to be implied." Lehman v. Nakshian, 453 U.S. 156, 161, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). As such, in order to bring a tort action against the United States under the FTCA, the claimant must present the action "in writing to the appropriate Federal agency within two years after such claim accrues." 28 U.S.C. § 2401(b). As a general rule, a claim under the FTCA accrues at the time of injury. Diaz v. United States, 165 F.3d 1337, 1339 (11th Cir. 1999) (citing United States v. Kubrick, 444 U.S. 111, 120, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)).

In his amended complaint, Powers alleged that the FSA's failure to "abide by deadline requirements" in advertising and offering the groves for sale prevented him from obtaining the groves with the fruit intact. Thus, regarding his FTCA claims, his alleged injury occurred when he purchased the 21-acre grove without the fruit in January 1999 and when the FSA rejected his final offer to buy the 132-acre grove on October 19, 1999. Yet Powers did not submit an administrative claim to the FSA until October 11, 2002—more than three years after his claim had accrued regarding either grove and well after the two-year limitations period. Accordingly, the district court did not err in holding that Powers' FTCA claims were time-barred.

**B. APA Claims**

Under the APA, we must set aside any agency action that is found to be arbitrary, capricious, an abuse of discretion, in excess of statutory authority, or without observance of procedure as required by law. 5 U.S.C. § 706(2). "[B]ut we cannot substitute our judgment for that of the agency. Alabama-Tombigbee Rivers Coalition v. Kempthorne, 477 F.3d 1250, 1254 (11th Cir. 2007). Rather, we must determine "whether an agency's decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Sierra Club v. Johnson, 436 F.3d 1269, 1273-74 (11th Cir. 2006) (internal quotation marks and citations omitted). In making this determination, "due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706. The doctrine of prejudicial error applies "when a mistake of the administrative body is one that clearly had no bearing on the procedure used or the substance of decision reached." U.S. Steel Corp. v. U.S. E.P.A., 595 F.2d 207, 215 (5th Cir. 1979);[2] Alabama Hosp. Ass'n v. Beasley, 702 F.2d 955, 958 (11th Cir. 1983).

Powers argues that the district court erred in holding that the FSA acted reasonably in failing to offer and sell the groves within the statutory time period.[3]

_____

[2] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), this court held that all decisions handed down by the former Fifth Circuit before the close of business on September 30, 1981 are binding precedent in the Eleventh Circuit.

[3] In his initial brief, Powers challenges only the district court's ruling regarding the reasonableness of the FSA's delay in selling the groves. He has therefore abandoned his right to appeal the district court's rulings regarding his remaining APA claims, including his claims

10

We disagree.

It is undisputed that the FSA did not advertise the groves for sale within 15 days of acquisition, as required by 7 U.S.C. § 1985(c)(1)(A), and the agency did not offer the groves for sale to beginning farmers within 75 days of acquisition, as then required by § 1985(c)(1)(B)(i). In our view, however, the FSA's delay was not arbitrary or capricious and did not prejudice Powers' interests.

First, the FSA did not act arbitrarily or without regard to procedure when it advertised and offered the groves for sale outside of the statutory time periods. Rather, after the FSA acquired the groves on July 9, 1998, the agency gave the original borrower the requisite notice of her homestead rights on July 15, 1998 (pursuant to 7 C.F.R. §§ 1951.911, 1955.106(a)), and at the end of the 30-day period allowed for the original borrower to exercise her homestead rights (pursuant to 7 C.F.R. § 1951.911(b)(2)(iii)), the FSA gave the Fish and Wildlife Service notice of its opportunity to provide wetlands input within 45 days (pursuant to the FSA's Memorandum of Understanding with that agency). As the district court observed, this delay enabled the FSA to avoid "the precarious position of offering the groves for sale, accepting bids, and then having to terminate or modify the sale due to either [the original borrower] claiming homestead protection, or the U.S.

_____

regarding the sale of the 1998-99 fruit crop. See Irwin v. Hawk, 40 F.3d 347, 347 n.1 (11th Cir. 1994) (stating that a pro se litigant abandons an issue by failing to challenge it on appeal).

11

Fish & Wildlife Service deciding that the land contained wetlands easements." Indeed, the applicable regulations provide that suitable farmland must be sold in the requisite priority "*[a]fter* homestead protection rights have expired." 7 C.F.R. § 1955.107(a)(2) (emphasis added).

Moreover, Powers has failed to demonstrate that the delay prejudiced his interests. Regarding the 21-acre grove, Powers argues that had the FSA offered the parcel for sale within the statutory period, it would have included the fruit crop. But nothing in the record supports this contention, and both the advertisement and the sale-contract explicitly provided that the crop was not part of the sale. Regarding the 132-acre grove, the record shows that Powers was able to participate fully in the bid and offer process, and the record does not establish that the FSA's ultimate rejection of all of Powers' bids and offers for this grove were a result of the agency's initial delay in offering the groves for sale. Indeed, the delay appears to have enabled Powers to secure the financing to support his $460,000 offer to purchase the 132-acre grove.

Because the FSA's delay in advertising and offering the groves for sale was not arbitrary, capricious, or an abuse of discretion, and because Powers has failed to demonstrate that the delay resulted in prejudice, we conclude that the district court did not err in granting summary judgment to the Defendants on Powers' APA

12

claims.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM**.